# <u>EXHIBIT B</u>

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Big Village Holding LLC, *et al.*,[1] | Case No. 23-10174 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 14** |

**ORDER (A) SCHEDULING A HEARING ON THE APPROVAL OF
THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER
THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES,
AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (B) APPROVING CERTAIN
BID PROCEDURES, BID PROTECTIONS, AND ASSUMPTION AND ASSIGNMENT
PROCEDURES, AND THE FORM AND MANNER OF NOTICE
<u>THEREOF, AND (C) GRANTING RELATED RELIEF</u>**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of: (a) an order, (i) scheduling a hearing (the "**Sale Hearing**") on approval of the proposed sale(s) (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances, including the sale of the A&I Stalking Horse Assets to NMMB, Inc. (the "**A&I Stalking Horse Purchaser**") and the sale of the EMX Stalking Horse Assets to ZStream Acquisition LLC ("**EMX Stalking Horse Purchaser**" and together with the A&I Stalking Horse Purchaser, the "**Stalking Horse Purchasers**") or, in the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Big Village Holding LLC (6595); Big Village Group Holdings LLC (5882); Big Village Group Inc. (6621); Big Village Insights, Inc. (8960); Big Village Media LLC (7288); EMX Digital, Inc. (5543); Big Village USA Corporation, Inc. (3414); Big Village Agency, LLC (0767); Balihoo, Inc. (9666); Deep Focus, Inc. (8234); and Trailer Park Holdings Inc. (1447). The Debtors' service address is 301 Carnegie Center, Suite 301, Princeton, NJ 80540.

[2]    Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion.

event the Stalking Horse Purchasers are not the Winning Bidders for the Stalking Horse Assets, then to the Winning Bidder, and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assigned Contract**," and collectively, the "**Assigned Contracts**") in connection therewith; (ii) authorizing and approving certain bidding procedures for the Sale attached hereto as Exhibit 1 (collectively, the "**Bid Procedures**"), authorizing and approving certain bidding protections, including the payment of a breakup fee and expense reimbursement (the "**Bid Protections**"), and authorizing and approving certain assumption and assignment procedures for the Assigned Contracts provided for herein (collectively, the "**Assumption and Assignment Procedures**"), and (iii) granting related relief; and (b) one or more orders (each, a "**Sale Order**"), (i) authorizing and approving the Debtors' entry into the Asset Purchase Agreement attached to the Motion as Exhibit C (the "**A&I Stalking Horse APA**") with the A&I Stalking Horse Purchaser or, in the event the A&I Stalking Horse Purchaser is not the Winning Bidder for the A&I Stalking Horse Assets, then an Alternative APA with the Winning Bidder; (ii) authorizing and approving the Debtors' entry into the Asset Purchase Agreement attached to the Motion as Exhibit E (the "**EMX Stalking Horse APA**") with the EMX Stalking Horse Purchaser or, in the event the EMX Stalking Horse Purchaser is not the Winning Bidder for the EMX Stalking Horse Assets, then an Alternative APA with the Winning Bidder; (iii) authorizing and approving the Sale, free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances; (iv) authorizing and approving the assumption and assignment of the Assigned Contracts in connection therewith; and (v) granting related relief; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as set forth herein; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the

Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion; and the a hearing on the Motion having been held; and the Court having found and determined that the relief set forth herein is in the best interests of the Debtors, their estates and creditors and all parties in interest, and that the legal and factual bases set forth in the Motion and at the hearing on the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[3]

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

B.    Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D.    The Debtors have demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required except as otherwise provided

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

for herein.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.    The Sale Notice (as defined below), in substantially in the form attached hereto as Exhibit 2, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bid Procedures, the auction for the Assets (the "**Auction**"), the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.    The Bid Procedures are: (a) fair, reasonable, and appropriate; and (b) designed to maximize recovery with respect to the Sale.

G.    The Debtors have articulated good and sufficient reasons for the Court to approve the payment of the Bid Protections, if necessary, to the Stalking Horse Purchasers in accordance with the Stalking Horse APAs.  The Bid Protections approved herein are fair, reasonable, and provide a benefit to the Debtors' estates and stakeholders.  If triggered in accordance with the terms of the Stalking Horse APAs, payment of the Bid Protections, under this Order and upon the conditions set forth in the Stalking Horse APAs and the Bid Procedures, are (a) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (b) reasonably tailored to encourage, rather than hamper, bidding for the Stalking Horse Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other potential bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Stalking Horse Assets subject to the Stalking Horse APAs, (c) of substantial benefit to the Debtors' estates and stakeholders, (d) reasonable and appropriate, (e) a

material inducement for, and conditions necessary to, ensure that the Stalking Horse Purchasers will continue pursuit of the proposed agreement to purchase the Stalking Horse Assets subject to the Stalking Horse APAs, and (f) reasonable in relation to the Stalking Horse Purchasers' lost opportunities resulting from the time and money spent pursuing such transaction.

      H.     The Bid Procedures, including the Bid Protections, were negotiated in good faith and at arms' length.

      I.     The Assumption and Assignment Procedures provided for herein and the Assumption Notice (as defined below), in substantially in the form attached hereto as <u>Exhibit 3</u>, are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption and Assignment Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined below).

      J.     Entry of this Order is in the best interests of the Debtors, their estates, their creditors, and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

      1.     Those portions of the Motion seeking approval of (a) the Debtors' entry into the Stalking Horse APAs (subject to higher or otherwise better offers in accordance with this Order) and all of its terms, including the Bid Protections, (b) the Assumption and Assignment Procedures, (c) the Bid Procedures, (d) the date and time of the Sale Hearing, and (e) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the entry of this Order, substantially in the form attached hereto as <u>Exhibit 2</u> (the "**Sale Notice**"), and the notice of the Debtors' potential assumption and assignment of the Assigned Contracts, substantially in the form attached hereto as <u>Exhibit 3</u> (the "**Assumption and**

Assignment Notice") (subclauses (a) – (e) above, collectively, the "**Bidding and Auction Process**"), are hereby GRANTED to the extent set forth herein.

2.      Any objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3.      The Debtors are authorized to (a) designate NMMB, Inc. as the A&I Stalking Horse Purchaser, (b) to enter into the A&I Stalking Horse APA, subject to final Court approval at the Sale Hearing, (c) designate ZStream Acquisition LLC as the EMX Stalking Horse Purchaser, (d) to enter into the EMX Stalking Horse APA, subject to final Court approval at the Sale Hearing, and (e) grant the Bid Protections to each of the Stalking Horse Purchasers, in each case at any time prior to the Auction.

4.      The Bid Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bid Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bid Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bid Procedures and this Order.

5.      The Debtors shall have the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder; *provided* that, in the event the Debtors withhold or limit access to any such information, the Debtors shall be required to inform the official committee of unsecured creditors (the "**Committee**") and the Prepetition Secured

<u>Parties, as soon as practicable, of the identity of the Qualifying Bidder and nature of the information being restricted or withheld</u>.  Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bid Procedures or the Sale, provided that the information was provided in accordance with this Order.

6.    For all purposes under the Bid Procedures:  (a) the Stalking Horse Purchasers shall be considered Qualifying Bidders, and the Stalking Horse APAs shall be considered Qualifying Bids; (b) the Stalking Horse Purchasers are, and will be deemed to be, Qualifying Bidders for all purposes under the Bid Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchasers; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

7.    The Bid Procedures shall apply to the Potential Bidders, the Qualifying Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale and the Auction.

8.    The Bid Protections are approved as follows: (i) for the A&I Stalking Horse Purchaser: (a) a breakup fee in the amount of $350,000, and (b) an expense reimbursement in a reasonable amount not to exceed $250,000 (exclusive of any amounts paid to the A&I Stalking Horse Purchaser prior to the Petition Date), and (c) a work fee in the amount of $100,000 paid to

the A&I Stalking Horse Purchaser by the Debtors prior to the Petition Date (the "**Work Fee**"); and (ii) for the EMX Stalking Horse Purchaser: (a) break-up fee of three (3) percent of the cash consideration, and (b) an expense reimbursement of up to $150,000.  The Bid Protections shall be paid pursuant to the terms of the Stalking Horse APAs.  No entity, other than the Stalking Horse Purchasers, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, contribution, or other similar fee or payment.

9.      The obligation of the Debtors to pay the Bid Protections:  (a) shall be entitled to administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code, *provided* that the Bid Protections shall be payable directly out of the proceeds of, and as a precondition to an Alternative Transaction (as defined in the Stalking Horse APAs); (b) shall survive the termination of the applicable Stalking Horse APAs; and (c) shall be payable in accordance with the terms set forth in the Stalking Horse APAs.

10.      Under no circumstances shall the Work Fee be recoverable by the Debtors, a chapter 11 or chapter 7 trustee, or any other successor or party in interest authorized to pursue the recovery of claims or actions arising under chapter 5 or any other provision of the Bankruptcy Code.

11.      Notwithstanding anything to the contrary set forth herein or in any other document, pleading or other order of this Court, the Prepetition Agent, as collateral agent on behalf of the Prepetition Secured Parties, has agreed not to exercise and as a result shall not have the right to credit bid the Prepetition Secured Obligations on the Stalking Horse Assets, as long as the Stalking Horse Agreements have not been terminated.  Notwithstanding the foregoing, the Prepetition Agent shall retain the right to credit bid the Prepetition Secured Obligations with

respect to any other portion of the Prepetition Collateral that is subject to the Prepetition Secured

Liens (other than the Stalking Horse Assets).

           12.    The following "**Assumption and Assignment Procedures**" are hereby

approved:

(a)     On or before March ~~9~~15, 2023 (the "**Assumption and Assignment Notice Deadline**"), the Debtors shall file with the Court and serve on any counterparty that is a party to an executory contract with the Debtors (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assigned Contract an Assumption and Assignment Notice.

(b)     The Assumption and Assignment Notice shall include, without limitation, the cure claim (each, a "**Cure Claim**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assigned Contracts. If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Assigned Contract, (ii) the Cure Claim for its Assigned Contract or (iii) the provision of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "**Contract Objection**") on or before the applicable objection deadline set forth in these Assumption and Assignment Procedures.

(c)     On or before the Assumption and Assignment Notice Deadline, the Debtors shall provide the Adequate Assurance Information for the Stalking Horse Purchasers to all Counterparties whose Assigned Contracts are included in the Stalking Horse APAs and that are the subject of the Assumption and Assignment Notice.

(d)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on March ~~23~~29, 2023** (the "**Contract Objection Deadline**"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assigned Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

    ***\*Any objections to adequate assurance of performance by the Stalking Horse Purchasers shall be filed by the Contract Objection Deadline.\****

***\*\*Any objections to adequate assurance of future performance by a Winning Bidder other than the Stalking Horse Purchasers shall be filed in accordance with subparagraph (g) below.\*\****

(e)     The "**Objection Notice Parties**" are as follows: (i) ~~proposed~~ counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Joseph M. Mulvihill (jmulvihill@ycst.com)); (ii) proposed investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); (iii) counsel to the A&I Stalking Horse Purchaser, Ballard Spahr LLP, 919 N Market Street, 11th Floor, Wilmington, Delaware 19801 (Attn: Tobey M. Daluz (daluzt@ballardspahr.com)); (iv) counsel to the EMX Stalking Horse Purchaser, DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, Maryland 21209 (Attn: C. Kevin Kobbe (kevin.kobbe@dlapiper.com)); (v) counsel to the Prepetition Agent, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020-1001 (Attn: Brian Trust (btrust@mayerbrown.com) and Scott M. Zemser (szemser@mayerbrown.com) and Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108 (Attn. L. Katherine Good (kgood@potteranderson.com); (vi) proposed counsel to the ~~Official Committee of Unsecured Creditors~~Committee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com)); and (vii) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Linda Richenderfer (Linda.Richenderfer@usdoj.gov)).

(f)     As soon as practicable after the completion of the Auction, the Debtors shall file with the Court a notice identifying the Winning Bidder(s) (a "**Notice of Winning Bidder**"), which shall set forth, among other things, (i) the Winning Bidder(s) and Back-Up Bidder(s) (if any) and the amount of each of the Winning Bid(s) and the Back-Up Bid(s) (if any), (ii) the Selected Assigned Contracts, and (iii) the proposed assignee(s) of such Selected Assigned Contracts.

(g)     Within twenty-four (24) hours after the completion of the Auction, the Debtors will cause to be served by overnight mail and, if available, electronic mail, upon each affected Counterparty and its counsel (if known) the Notice of Winning Bidder.

***\*\*In the event that a Winning Bidder is not a Stalking Horse Purchaser, the Counterparties shall file any Contract Objections <u>solely</u> on the basis of adequate assurance of future performance not later than ~~March 31~~April 5, 2023, at ~~4:00 p.m.~~ noon (ET).\*\****

(h)     At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder(s), of only those Assigned Contracts that have been selected by the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then

30081388.8

the Winning Bidder(s), to be assumed and assigned (each, a "**Selected Assigned Contract**," and collectively, the "**Selected Assigned Contracts**"). The Debtors and their estates reserve any and all rights with respect to any Assigned Contracts that are not ultimately designated as Selected Assigned Contracts.

(i)     If no Contract Objection is timely received with respect to a Selected Assigned Contract: (i) the Counterparty to such Selected Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder); (ii) any and all defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Claim for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Claim and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against the Debtors and their estates or the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder for such Selected Assigned Contract, or the property of any of them, that existed prior to the entry of the Sale Order.

(j)     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with Winning Bidder(s), or fixed by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assigned Contract may be assumed by the Debtors and assigned to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder for such Selected Assigned Contract, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder for such Selected Assigned Contract, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(k)     Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the

Debtors are determined to be Assigned Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by regular mail, on the Counterparties an Assumption and Assignment Notice, and such Counterparties shall file any Contract Objections not later than fourteen (14) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assigned Contracts to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidder, then to the Winning Bidder, without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

13.    The Debtors' decision to assume and assign the Assigned Contracts to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder(s), is subject to this Court's approval and the closing of the Sale.  Accordingly, absent this Court's approval and the closing of the Sale, the Assigned Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

14.    The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The Assumption and Assignment Notice is:  (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder(s), some or all of the Assigned Contracts, and (ii) afford the Counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

15.    The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their

estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

16.    The Sale Notice, the Assumption and Assignment Notice, the Bid Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bid Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder, of the Assigned Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

17.    The Sale Notice is approved.  Within two (2) business days of the entry of this Order, the Debtors shall serve the Sale Notice by regular mail on:  (a) the Office of the United States Trustee for Region III; (b) counsel to the Stalking Horse Purchasers; (c) all parties known by the Debtors to assert a lien or encumbrance on any of the Assets; (d) all persons known or reasonably believed to have asserted an interest in or claim to any of the Assets; (e) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (f) the Office of the United States Attorney for the District of Delaware; (g) the Office of the Attorney General in each state in which the Debtors have operated; (h) the Office of the Secretary of State in each state in which the Debtors have operated; (i) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (j) all environmental

authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (k) the Federal Trade Commission; (l) the United States Attorney General/Antitrust Division of Department of Justice; (m) all non-Debtor parties to any of the Assigned Contracts; (n) all of the Debtors' other known creditors and equity security holders; (o) counsel to the prepetition lender; (p) counsel to the Committee; and (q) all other parties that have filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date (collectively, the "**Sale Notice Parties**").

18.     The Debtors shall post the Sale Notice, the Assumption and Assignment Notice, and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Kroll, LLC at https://cases.ra.kroll.com/bigvillage.  Within seven (7) business days of the entry of this Order, or as soon as reasonably practicable, the Debtors shall cause the Sale Notice to be published once in the national edition of *USA Today* or other similar publication.  Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

19.     Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on March ~~23~~29, 2023** (the "**Sale Objection Deadline**"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required

by the Local Rules; and (e) be served upon the Objection Notice Parties.  If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and being heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

20.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by the Stalking Horse APAs or any Alternative APA with a Winning Bidder other than the Stalking Horse Purchasers, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

21.     As part of its bid, each Qualifying Bidder must provide the Debtors, the other Bidding Procedures Notice Parties, and the Consultation Parties[4] information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to such Qualifying Bidder; and (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance.  To the extent that the Qualifying Bidder is a newly formed acquisition entity or the

---

[4] The "**Consultation Parties**" are the Prepetition Secured Parties and the Committee; *provided* that to the extent any Prepetition Secured Party is or seeks to be a Qualifying Bidder (a "**Bidding Secured Party**"), such Bidding Secured Party shall not be a Consultation Party with respect to the assets and transaction for which the Bidding Secured Party is or seeks to become a Qualifying Bidder and the Debtors and the Agent shall take reasonable steps to ensure the Bidding Secured Party does not receive information with respect to other Qualifying Bidders for such transaction; *provided further* that, and for the avoidance of doubt, the Prepetition Secured Parties excluding the Bidding Secured Party shall continue to be Consultation Parties.

like, the financial and other information supporting the Qualifying Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Qualifying Bidder's parent company or sponsor.

22.     Any party in receipt of Adequate Assurance Information under this Order shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Order and the Bid Procedures.  Such Counterparty may not use or disclose, except to representatives, attorneys, advisors and financing sources (collectively, "**Representatives**"), any confidential Adequate Assurance Information for any purpose other than:  (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; and (b) in support of any objection (the "**Assignment Objection**") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance.    Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  The party filing an Assignment Objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d).  The unredacted versions of such Assignment Objections shall be served upon the Debtors, the other Bidding Procedures Notice Parties, the Consultation Parties and the U.S. Trustee, with a copy to the Court's chambers; provided further, that all rights of all parties in interest in these Chapter 11 Cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

23.    If no timely Qualifying Bids other than the Stalking Horse APAs are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that this Court approve the Stalking Horse APAs and the transactions contemplated thereunder.  If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse APAs, then the Debtors shall conduct the Auction on ~~March 30~~**April 4, 2023, at ~~10:00~~ 9:00 a.m. (ET)**, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined below).  Only the Debtors, the Auction Bidders (including the Stalking Horse Purchasers), the Consultation Parties, the United States Trustee for the District of Delaware, and any creditors of the Debtors who provide the Debtor notice of intent to attend the auction in accordance with the Bid Procedures, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "**Auction Participants**"); provided that any such creditors provide counsel for the Debtors written notice of their intent to attend the Auction no later than 5:00 p.m. (ET) the day prior to the Auction.

24.    The Debtors shall have until **April ~~4~~5, 2023, at ~~noon~~ 4:00 p.m. (ET)** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

25.    The Sale Hearing shall be held in this Court on ~~_____~~**April 6, 2023 at ~~__:__~~ 10:00 a.m. (ET)**, unless otherwise determined by this Court.  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties and the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then in consultation with the Winning Bidder, from time to time without further notice to creditors or other

parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these Chapter 11 Cases.

26.    The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

27.    In the event that there is a conflict between this Order or the Bid Procedures, on the one hand, and the Motion, the Stalking Horse APAs, or an Alternative APA, on the other hand, this Order and the Bid Procedures shall control and govern.  If there is a conflict between this Order and the Bid Procedures, this Order shall control and govern.  If there is a conflict between this Order or the Bid Procedures, on the one hand, and any notice served in connection with the Motion or this Order, on the other hand, this Order and the Bid Procedures shall control and govern.

28.    Prior to mailing the Assumption and Assignment Notice and the Sale Notice, as applicable, the Debtors, in consultation with the Stalking Horse Purchasers, may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

29.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in its sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

30.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

31.     Attached hereto as <u>Schedule A</u> is a summary of the key dates established by this Order, *provided, however*, that the right of the Committee to seek to move or extend any such key date is fully preserved.

32.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

**SCHEDULE A**

| DATE | DEADLINE/EVENT |
|---|---|
| **March ~~9~~15, 2023** | Deadline for Debtors to file Assumption Notice |
| **March ~~23~~29, 2023 at 4:00 p.m. (ET)** | Sale Objection Deadline; Contract Objection Deadline[1] |
| **~~March 27~~April 3, 2023, at 10:00 a.m. (ET)** | Bid Deadline |
| **~~March 29~~April 3, 2023, at 4:00 p.m. (ET)** | Deadline for Debtors to Designate Qualifying Bids and Baseline Bid |
| **~~March 30~~April 4, 2023, at 9:00 a.m. (ET)** | Auction |
| **As soon as practicable after completion of the ~~auction~~Auction** | Deadline to File and Serve Notice of Winning Bidder |
| **~~March 31~~April 5, 2023 at ~~4:00 p.m.~~noon (ET)** | Adequate Assurance Objection Deadline for Winning Bidder Other Than the Stalking Horse Purchasers |
| **April ~~4~~5, 2023, at ~~noon~~4:00 p.m. (ET)** | Debtors' Deadline to Reply to Sale Objections |
| **April 6, 2023, ~~subject to Court availability~~at 10:00 a.m. (ET)** | Sale Hearing |
| **April 20, 2023** | Sale Closing |

---

[1]   The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assigned Contracts (including adequate assurance of future performance by the Stalking Horse Purchaser), with the exception of objections related to adequate assurance of future performance by a Winning Bidder *other than* the Stalking Horse Purchaser.

# **EXHIBIT 1**

## **Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Big Village Holding LLC, *et al.*,[1] | Case No. |
| Debtors. | 23-(_____)<br>(Joint Administration Requested)<br>23-10174 |
| | (Jointly Administered) |

## BID PROCEDURES

On [*]February 8, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [*], the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. *] (the "**Bidding Procedures Order**"), among other things, granting certain relief requested in the related motion [Docket No. *14] (the "**Bidding Procedures Motion**"), including authorizing the Debtors to solicit bids and approving the procedures set forth herein (collectively, the "**Bid Procedures**") to be employed by the Debtors in connection with the proposed sale (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Assets**"), including (i) the sale of certain assets related to the Debtors' Agency and Insights businesses (the "**A&I Stalking Horse Assets**") to NMMB, Inc. (the "**A&I Stalking Horse Purchaser**"); and (ii) the sale of certain assets related to the Debtors' managed digital marketing services businesses (the "**EMX Stalking Horse Assets**" and collectively with the A&I Stalking Horse Assets, the "**Stalking Horse Assets**") to ZStream Acquisition LLC (the "**EMX Stalking Horse Purchaser**" and together with the A&I Stalking Horse Purchaser, the "**Stalking Horse Purchasers**"), free and clear of all Encumbrances other than Assumed Liabilities.[2] The Stalking Horse APAs are attached to the Bidding Procedures Motion as Exhibits C and E.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Big Village Holding LLC (6595); Big Village Group Holdings LLC (5882); Big Village Group Inc. (6621); Big Village Insights, Inc. (8960); Big Village Media LLC (7288); EMX Digital, Inc. (5543); Big Village USA Corporation. (3414); Big Village Agency, LLC (0767); Balihoo, Inc. (9666); Deep Focus, Inc. (8234); and Trailer Park Holdings Inc. (1447).  The Debtors' service address is 301 Carnegie Center, Suite 301, Princeton, NJ 80540.

[2]    Capitalized terms used but not yet defined herein shall have the meaning ascribed to such terms below. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS, INCLUDING THE STALKING HORSE ASSETS, SHOULD CONTACT:**

(A)    SACHIN LULLA (SACHIN.LULLA@STEPHENS.COM) OF STEPHENS INC. INVESTMENT BANKER FOR THE DEBTORS; AND/OR

(B)    MICHAEL R. NESTOR, ESQ. (MNESTOR@YCST.COM); JOSEPH BARRY, ESQ. (JBARRY@YCST.COM), OR JOSEPH M. MULVIHILL, ESQ. (JMULVIHILL@YCST.COM) OF YOUNG CONAWAY STARGATT & TAYLOR, LLP, COUNSEL FOR THE DEBTORS.

### *Summary of Key Dates Established by Bidding Procedures*

| DATE | DEADLINE/EVENT |
|---|---|
| **March ~~9~~15, 2023** | Assumption Notice Deadline |
| **March ~~23~~29, 2023 at 4:00 p.m. (ET)** | Sale Objection Deadline; Contract Objection Deadline[3] |
| **~~March 27~~April 3, 2023, at 10:00 a.m. (ET)** | Bid Deadline |
| **~~March 29~~April 3, 2023, at 4:00 p.m. (ET)** | Deadline for Debtor to Designate Qualifying Bids and Baseline Bid |
| **~~March 30~~April 4, 2023, at 9:00 a.m. (ET)** | Auction |
| **As soon as practicable after completion of the Auction** | Deadline to File and Serve Notice of Winning Bidder |
| **~~March 31~~April 5, ~~2032~~2023, at ~~4:00 p.m.~~noon (ET)** | Adequate Assurance Objection Deadline for Winning Bidder Other Than the Stalking Horse Purchaser |
| **April ~~4~~5, 2023 ~~at noon~~, at 4:00 p.m. (ET)** | Debtors' Deadline to Reply to Sale Objections |
| **April 6, 2023, ~~subject to Court availability~~at 10:00 a.m. (ET)** | Sale Hearing |
| **April 20, 2023** | Sale Closing |

---

[3]    The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assigned Contracts (including adequate assurance of future performance by the Stalking Horse Purchasers), with the exception of objections related to adequate assurance of future performance by a Winning Bidder *other than* the Stalking Horse Purchasers.

1.    **Stalking Horse Purchasers**

On February 7, 2023, the Debtors entered into the Stalking Horse APAs with the Stalking Horse Purchasers for the sale of the Stalking Horse Assets.  As set forth more fully in the Stalking Horse APAs, (i) the A&I Stalking Horse Purchaser is paying $12 million in cash, assuming certain liabilities and executory contracts, and satisfying all cure costs (the "**A&I Purchase Price**"); and (ii) the EMX Stalking Horse Purchaser is paying $2.1 million in cash, acquiring certain outstanding accounts receivables on a dollar-for-dollar basis, assuming certain liabilities and executory contracts, and satisfying all cure costs (the "**EMX Purchase Price**").  The Stalking Horse APAs also include various customary representations, warranties and covenants by and from the Debtors and the Stalking Horse Purchasers, and certain conditions to closing and rights of termination related to the Sales and these Chapter 11 Cases generally.

2.    **Assets to be Sold**

The Debtors shall offer for sale all of the Assets, including the Stalking Horse Assets, provided that the Debtors determine, in consultation with the prepetition secured parties (the "**Prepetition Secured Parties**") and ~~any~~ the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "**Committee**," and together with the Prepetition Secured Parties and the Debtors, the "**Consultation Parties**"), that the aggregate consideration offered by any bid, or combination of bids, for the Assets, satisfies the requirements set forth in these Bid Procedures. **<u>Potential Bidders may bid on all or any number or combination of the Assets, including the Stalking Horse Assets.</u>**

3.    **Participation Requirements**

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder**".  To become a Qualifying Bidder, and thus being able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"), a Potential Bidder must submit to the Debtors, the Consultation Parties, and their advisors:

(a)    documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(b)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(c)    a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that the interested party has a *bona fide* interest in consummating a sale transaction; and

(d)      sufficient information, as determined by the Debtors, after consultation with the Consultation Parties, to allow the Debtors to determine that the interested party (x) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their reasonable discretion), and (y) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bid Procedures: (i) the Stalking Horse Purchasers shall be considered Qualifying Bidders for the Stalking Horse Assets, and the Stalking Horse APAs shall be considered Qualifying Bids for the Stalking Horse Assets and for all purposes under the Bid Procedures, without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchasers; and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets, including the Stalking Horse Assets.

**4.      Bankruptcy Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall:  (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bid Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of such parties; (b) bring any such action or proceeding in the Court; and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

**5.      Form of Agreement for Sale of the Assets, Including the Stalking Horse Assets**

Potential Bidders should reference the applicable Stalking Horse APA in connection with a bid that includes the sale of the Stalking Horse Assets or any combination of Assets.  As set forth below, Potential Bidders intending to submit bids that include the Stalking Horse Assets or any combination of Assets must include with their bids:

(a)      a statement that such Potential Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse APA; and

(b)      a clean and duly executed asset purchase agreement (an "**Alternative APA**") and a marked copy of the Alternative APA that reflects any variations from the applicable Stalking Horse APA.

**6.**     **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (a) investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); and/or (b) counsel for the Debtors, Michael R. Nestor, Esq. (mnestor@ycst.com); Joseph Barry, Esq. (jbarry@ycst.com), and Joseph M. Mulvihill, Esq. (jmulvihill@ycst.com).

The due diligence period shall extend through and including the Bid Deadline. The Debtors, in their business judgment, may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determines is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder; *provided* that, in the event the Debtors withhold or limit access to any such information, the Debtors shall be required to inform the Consultation Parties, as soon as practicable, of the identity of the Qualifying Bidder and nature of the information being restricted or withheld. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bid Procedures and the Sale.

**7.**     **Bid Requirements**

Other than in the case of the Stalking Horse Purchasers and the Stalking Horse APAs, which shall be considered Qualifying Bidders and Qualifying Bids, respectively, for all purposes under the Bid Procedures, without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchasers, to be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a)      be in writing;

(b)      fully disclose the identity of the Qualifying Bidder (and to the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the identity of the Qualifying Bidder's parent company or sponsor), and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wishes to discuss the bid

30084594.2

submitted by the Qualifying Bidder;

(c)    set forth the purchase price to be paid by such Qualifying Bidder;

(d)    not propose payment in any form other than cash;

(e)    state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(f)    specify the Assets that are included in the bid and state that such Qualifying Bidder offers to (i) purchase all of the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estate than, the terms set forth in the applicable Stalking Horse APA;

(g)    be accompanied by an Alternative APA that reflects any variations from the applicable Stalking Horse APA;

(h)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale;

(i)    state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Alternative APA and provide written evidence in support thereof;

(j)    contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the Alternative APA, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve such information on any counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale within one (1) business day after the Debtors' receipt of such information.  To the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the financial and other information supporting the Qualifying Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Qualifying Bidder's parent company or sponsor;

(k)    (A) identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the Alternative APA, (B) provide for the payment of cure costs related to such executory contracts and unexpired leases, and (C) demonstrate, in the Debtors' reasonable business judgment, after consultation with

30081504.2

the Consultation Parties, that the Qualifying Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases;

(l)     a commitment to close the transactions contemplated by the Alternative APA by no later than April 20, 2023;

(m)    not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment;

(n)     if the Alternative APA contemplates the purchase of the A&I Stalking Horse Assets, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the A&I Purchase Price, (B) the A&I Bid Protections, and (C) $100,000;

(o)     if the Alternative APA contemplates the purchase of the EMX Stalking Horse Assets, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the EMX Purchase Price, (B) the EMX Bid Protections, and (C) $50,000;

(p)     if the Alternative APA contemplates the purchase of a combination of both the A&I Stalking Horse Assets and the EMX Stalking Horse Assets, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the Purchase Price set forth in the Stalking Horse APAs, (B) the Bid Protections, and (C) $150,000;

(q)     not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

(r)     contain written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Alternative APA, with appropriate contact information for such financing sources;

(s)     contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bid Procedures and the Sale, and (iv) the sale of the Assets on an "as-is, where-is" basis;

(t)     sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approvals required for the

Qualifying Bidder to close the transactions contemplated by the Alternative APA, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's Alternative APA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Alternative APA; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

(u)     provides for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Winning Bid, in accordance with the terms of the Alternative APA;

(v)     includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Alternative APA;

(w)     provides a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the Alternative APA (or such additional amount as may be determined by the Debtors in consultation with the Consultation Parties) *provided, however*, that the Stalking Horse Purchasers are not required to make any additional deposit; and

(x)     provides that in the event of the Qualifying Bidder's breach of, or failure to perform under, the Alternative APA, the Debtors and their estates shall be entitled to retain the Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

8.      **Bid Deadline**

A Qualifying Bidder, other than the Stalking Horse Purchasers, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties (as defined below) and the Consultation Parties so as to be received on or before ~~March 27~~**April 3, 2023**~~,~~ **, at 10:00 a.m.** (the "**Bid Deadline**"), provided that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties.  To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of the Chapter 11 Cases indicating the same.  **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

9.      **Evaluation of Qualifying Bids**

The Debtors will deliver, within one (1) ~~business~~ calendar day after receipt thereof, copies of all bids from Qualifying Bidders to the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid.

No later than ~~March  29~~April 3, 2023, at 4:00 p.m., the Debtors shall:  (i) notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**," and the Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall promptly notify any Stalking Horse Purchasers and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

10.     **No Qualifying Bids**

If no timely Qualifying Bids other than any Stalking Horse Purchasers' Qualifying Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Stalking Horse APAs and the transactions contemplated thereunder.

11.     **Auction**

If the Debtors timely receive competing Qualifying Bids for any Assets, then the Debtors shall conduct an Auction (the "**Auction**").  Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors:  (a) the number, type and nature of any changes to the Stalking Horse APAs requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other

approval; (e) the net benefit to the Debtors' estates; and (f) any other factors the Debtors~~ ~~, after consultation with the Consultation Parties, may reasonably deem relevant.

The Auction shall be governed by the following procedures:

(a)     the Auction shall be held on ~~March 30~~April 4, 2023, at ~~10:00~~ 9:00 a.m. (ET) at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801 or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined below), provided that Qualified Bidders shall be entitled to attend the Auction via video conference;

(b)     only the Stalking Horse Purchasers and the other Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c)     the Auction Bidders shall appear at the Auction, or through a duly authorized representative;

(d)     only the Debtors, the Auction Bidders, the Consultation Parties, the Office of the United States Trustee for the District of Delaware, and any creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "**Auction Participants**"); provided that any such creditors provide counsel for the Debtors written notice of their intent to attend the Auction no later than noon (ET) the day prior to the Auction;

(e)     the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)     the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bid Procedures, the Auction or the Sale;

(g)     bidding shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least $150,000, $100,000, or $50,000, as may be applicable under the Bidding Procedures, provided that: (i) each such successive bid must be a Qualifying Bid; and (ii) the Debtors shall retain the right to modify the bid increment requirements at the Auction after consultation with the Consultation Parties;

(h)     In any successive bid by the Stalking Horse Purchasers, the amount of the Bid Protections shall be included in the calculation of such bid;

(i)     the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(j)     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors

shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(k)    the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(l)    each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(m)    the Auction Bidders shall have the right to make additional modifications to the Stalking Horse APAs or any Alternative APA, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse APAs, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Winning Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(n)    the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Stalking Horse APAs or any Alternative APA, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(o)    upon the conclusion of the Auction, the Debtors shall determine, in consultation

with the Consultation Parties and subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction (the "**Winning Bid**"). In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the assumption of liabilities, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse APAs or any Alternative APA submitted with the Winning Bid, as applicable, requested by each bidder, and the net benefit to the Debtors' estate. The bidder submitting such Winning Bid at the Auction shall become the "**Winning Bidder**," and shall have such rights and responsibilities of the purchaser as set forth in the Stalking Horse APAs or any Alternative APA, as applicable. The Debtors may, in their business judgment and in consultation with the Consultation Parties, designate the Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Assets in the event that the Winning Bidder does not close the Sale;

(p)     within one (1) business bay of the close of the Auction, in the event the Stalking Horse Purchasers are not the Winning Bidders, the Winning Bidder shall supplement the Winning Bidder's Deposit such that the Deposit shall be equal to an amount that is ten (10%) percent of the Winning Bid; and

(q)     prior to the Sale Hearing, the Winning Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Winning Bid was made.

**THE WINNING BID AND ANY BACK-UP BID AND THEIR RELATED PURCHASE AGREEMENTS SHALL EACH CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE WINNING BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE WINNING BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

**12.     Sale Hearing**

The Winning Bid and any Back-Up Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchasers is received, then the Stalking Horse APAs) will be subject to approval by the Court. The Sale Hearing to approve the Winning Bid and any Back-Up Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchasers is received, then the Stalking Horse APAs) shall take place on ~~————, April 6,~~ **2023** ~~at    :   ,~~ **at 10:00 a.m**. The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties and the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidder, then in consultation with the Winning Bidder, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these Chapter 11 Cases.

At the Sale Hearing, the Debtors will seek entry of an order that, among other things authorizes and approves the Sale to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidder, then to the Winning Bidder, pursuant to the terms and conditions set forth in the Stalking Horse APAs or Alternative APA submitted by the Winning Bidder, as applicable.

### 13.    Backup Bidder

Notwithstanding any of the foregoing, in the event that the Winning Bidder fails to close the Sale on or before April 20, 2023 (or such date as may be extended by the Debtors), the Back-Up Bid will be deemed to be the Winning Bid, the Back-Up Bidder will be deemed to be the Winning Bidder, and the Debtors shall be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

### 14.    Return of Deposits

All Deposits shall be returned to each bidder not selected by the Debtors as the Winning Bidder or the Back-Up Bidder no later than five (5) business days following the conclusion of the Auction.  The Deposit of the Back-Up Bidder shall be returned no later than five (5) business days following the closing of the Sale.  The deposit of the Winning Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale.  If the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Alternative APA or any Stalking Horse APA or any Alternative APA, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.  For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Winning Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

### 15.    Notice and Consultation Parties

The term "**Bid Procedures Notice Parties**" as used in these Bidding Procedures shall mean: (i) Big Village Group, Inc., 301 Carnegie Center, Suite #301, Princeton, NJ 08540 (Attn: Kasha Cacy, Chief Executive Officer); (ii) ~~proposed~~ counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Joseph M. Mulvihill (jmulvihill@ycst.com)); (iii) proposed investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); (iv) counsel to the A&I Stalking Horse Purchaser, Ballard Spahr LLP, 919 N. Market Street, 11th Floor, Wilmington, DE 19801-3034 (Attn: Tobey Marie Daluz (daluzt@ballardspahr.com)); (v) counsel to the EMX Stalking Horse Purchaser, DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, Maryland 21209 (Attn: C. Kevin Kobbe (kevin.kobbe@dlapiper.com)); (vi) counsel to the Prepetition Agent, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020-1001 (Attn: Brian Trust (btrust@mayerbrown.com) and Scott M. Zemser (szemser@mayerbrown.com) and Potter

Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108 (Attn. L. Katherine Good (kgood@potteranderson.com); and (vii) proposed counsel to the ~~Official Committee of Unsecured Creditors~~Committee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com)).

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bid Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that ~~any Committee member,~~ any Prepetition Secured Party, the collateral agent on behalf of the Prepetition Secured Parties, or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bid Procedures will be waived without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of the Committee submits a Qualifying Bid, the Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets to which such Committee member submitted a Qualifying Bid and shall not provide any information regarding the sale of the Assets to such member.

16.     **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify the Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

**EXHIBIT 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Big Village Holding LLC, *et al.*,[1] | Case No. 23-(_____) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No.___** |

**NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE APAS,**
**BID PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), on [*] (the "**Petition Date**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Debtors are seeking to sell (the "**Sale**") all or substantially all of their assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.[2] In connection with the Sale, the Debtors have entered into two Asset Purchase Agreements for: (i) the sale of certain assets related to the Debtors' Agency and Insights businesses (the "**A&I Stalking Horse Assets**") to NMMB, Inc. (the "**A&I Stalking Horse Purchaser**"); and (ii) the sale of certain assets related to the Debtors' managed digital marketing services businesses (the "**EMX Stalking Horse Assets**" and collectively with the A&I Stalking Horse Assets, the "**Stalking Horse Assets**") to ZStream Acquisition LLC (the "**EMX Stalking Horse Purchaser**" and together with the A&I Stalking Horse Purchaser, the "**Stalking Horse Purchasers**"), free and clear of all Encumbrances other than Assumed Liabilities, subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bid Procedures (as defined below).

**PLEASE TAKE FURTHER NOTICE** that by order dated [*] [Docket No. *] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. *] (the "**Bidding Procedures Motion**") and certain "**Bid Procedures**" that govern the Sale. All interested parties should carefully read the Bidding Procedures Order and the Bid Procedures. Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bid Procedures and the Stalking Horse APAs (which are attached to the Bidding Procedures Motion as Exhibits C and E) are available upon request to the Debtors' claims and noticing agent, Kroll Restructuring Administration, LLC, via telephone at (888) 819-5647 (Toll-free) or (646) 440-4398 (International) or via email at: bigvillageinfo@ra.kroll.com, or the case website at https://cases.ra.kroll.com/bigvillage. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale. **Any interested bidder should contact (a) the investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); and/or (b) counsel for the Debtors, Michael R. Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Joseph M. Mulvihill (jmulvihill@ycst.com).**

• Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Big Village Holding LLC (6595); Big Village Group Holdings LLC (5882); Big Village Group Inc. (6621); Big Village Insights, Inc. (8960); Big Village Media LLC (7288); EMX Digital, Inc. (5543); Big Village USA Corporation, Inc. (3414); Big Village Agency, LLC (0767); Balihoo, Inc. (9666); Deep Focus, Inc. (8234); and Trailer Park Holdings Inc. (1447). The Debtors' service address is 301 Carnegie Center, Suite 301, Princeton, NJ 08540.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order (as defined below).

in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on March 23~~29~~, 2023** (the "**Sale Objection Deadline**"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. The "**Objection Notice Parties**" are as follows: (i) ~~proposed~~ counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Joseph M. Mulvihill (jmulvihill@ycst.com)); (ii) proposed investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); (iii) counsel to the A&I Stalking Horse Purchaser, Ballard Spahr LLP, 919 N Market Street, 11th Floor, Wilmington, Delaware 19801 (Attn: Tobey M. Daluz (daluzt@ballardspahr.com)); (iii) counsel to the EXM Stalking Horse Purchaser, DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, Maryland 21209 (Attn: C. Kevin Kobbe (kevin.kobbe@dlapiper.com)) (iv) counsel to the prepetition lenders, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020-1001 (Attn: Brian Trust (btrust@mayerbrown.com) and Scott M. Zemser (szemser@mayerbrown.com) and Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108 (Attn. L. Katherine Good (kgood@potteranderson.com); (v) counsel to the Official Committee of Unsecured Creditors; and (vi) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Linda Richenderfer (Linda.Richenderfer@usdoj.gov)).

- The deadline to submit a bid for any of the Assets is **~~March 27~~April 3, 2023 at 10:00 a.m. (ET)**.

- An auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **~~March 30~~April 4, 2023, at ~~10:00~~ 9:00 a.m. (ET)**, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801.

- Unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the Sale on **~~[*] at [*]~~April 6, 2023 at 10:00 a.m. (ET)**,

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

Dated:   [*], 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_____
Michael R. Nestor (No. 3526)
Joseph Barry (No. 4221)
Matthew B. Lunn (No. 4119)
Joseph M. Mulvihill (No. 6061)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Tel.: (302) 571-6600
Facsimile: (302) 571-1253
Email:   mnestor@ycst.com
           jbarry@ycst.com
           mlunn@ycst.com
           jmulvihill@ycst.com

~~Proposed~~ Counsel for Debtors and Debtors in Possession

30084388.8

## **EXHIBIT 3**

**Assumption Notice**

30081388.8

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Big Village Holding LLC, *et al.*,[1] | Case No. 23-(_____) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No.___** |

### NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

**PLEASE TAKE NOTICE THAT:**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), on [*], in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Debtors are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "**Sale**") of their assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances.[2] In connection with the Sale, the Debtors have entered into Asset Purchase Agreements for: (i) the sale of certain assets related to the Debtors' Agency and Insights businesses (the "**A&I Stalking Horse Assets**") to NMMB, Inc. (the "**A&I Stalking Horse Purchaser**"); and (ii) the sale of certain assets related to the Debtors' managed digital marketing services businesses (the "**EMX Stalking Horse Assets**" and collectively with the A&I Stalking Horse Assets, the "**Stalking Horse Assets**"), to ZStream Acquisition LLC (the "**EMX Stalking Horse Purchaser**")subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures.

By order, dated [*] [Docket No. *] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. *] (the "**Bidding Procedures Motion**"), certain "**Assumption and Assignment Procedures**" that govern the Debtors' assumption and assignment of their executory contracts and unexpired leases in connection with the Sale, and certain "**Bid Procedures**" that govern the sale of the Assets to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Big Village Holding LLC (6595); Big Village Group Holdings LLC (5882); Big Village Group Inc. (6621); Big Village Insights, Inc. (8960); EMX Digital, Inc. (5543); Big Village USA Corporation, Inc. (3414); Big Village Agency, LLC (0767); Balihoo, Inc. (9666); Deep Focus, Inc. (8234); and Trailer Park Holdings Inc. (1447). The Debtors' service address is 301 Carnegie Center, Suite 301, Princeton, NJ 80540.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order (as defined below).

highest or otherwise best bidders.  Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bid Procedures and the Stalking Horse APA are available for download at https://cases.ra.kroll.com/bigvillage. (the "**Case Website**") or from the Debtors' claims and noticing agent, Kroll Restructuring Administration, LLC, via telephone at (888) 819-5647 (Toll-free) or (646) 440-4398 (International) or via email at: bigvillageinfo@ra.kroll.com.

**You are receiving this Notice because you may be a party to an unexpired lease or an executory contract that *may* be assumed and assigned (collectively, the "Contracts") in connection with such Sale.  A list of the Contracts is attached hereto as <u>Exhibit A</u>.**

The Debtors have determined the cure amounts owing (each, a "**Cure Claim**," and collectively, the "**Cure Claims**") under each Contract, and have listed the applicable Cure Claims on <u>Exhibit A</u> attached hereto.  The Cure Claims are the only amounts proposed to be paid upon any assumption and assignment of the Contracts, in full satisfaction of all amounts outstanding under the Contracts.

**To the extent that a Counterparty to a Contract objects to (a) the assumption and assignment of such party's Contract, (b) the applicable Cure Claim, or (c) the provision of adequate assurance of future performance, the Counterparty must file and serve an objection (a "Contract Objection").  Any Contract Objection shall:  (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 <u>on or before 4:00 p.m. (ET) on March <s>23</s>29, 2023</u> (the "Contract Objection Deadline"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.**

**\*Any objections to adequate assurance of performance by the Stalking Horse Purchasers shall be filed by the Contract Objection Deadline.\***

**\*\*Any objections to adequate assurance of future performance by a Winning Bidder other than the Stalking Horse Purchasers shall be filed not later than <s>March 31</s>April 5, 2023 at <s>4:00 p.m.</s> noon (ET).\*\***

The "**Objection Notice Parties**" are as follows:  (a) <s>proposed</s> counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Joseph M. Mulvihill (jmulvihill@ycst.com)); (b) proposed investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); (c) counsel to the A&I Stalking Horse Purchaser, Ballard Spahr LLP, 919 N Market Street, 11th Floor, Wilmington, Delaware 19801 (Attn: Tobey M. Daluz (daluzt@ballardspahr.com)); (c) counsel to the EXM Stalking Horse Purchaser, DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, Maryland 21209 (Attn: C. Kevin Kobbe (kevin.kobbe@dlapiper.com)); (d) counsel to the Prepetition Agent, Mayer Brown LLP, 1221

Avenue of the Americas, New York, New York 10020-1001 (Attn: Brian Trust (btrust@mayerbrown.com) and Scott M. Zemser (szemser@mayerbrown.com) and Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108 (Attn. L. Katherine Good (kgood@potteranderson.com); (e) counsel to the Official Committee of Unsecured Creditors; and (f) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Linda Richenderfer (Linda.Richenderfer@usdoj.gov)).

**If no Contract Objection is timely received with respect to a Selected Assigned Contract:  (a) the Counterparty to such Selected Assumed Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder); (b) any and all defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (c) the Cure Claim for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Claim and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against the Debtors and their estates or the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidder, then the Winning Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.**

**If no timely objection is received as to adequate assurance of future performance with respect to a Contract, the non-Debtor party to such Contract shall be deemed to have consented to the assumption, assignment, and/or transfer of the applicable Contract to the proposed assignee, and shall be forever barred and estopped from asserting or claiming that any conditions to such assumption, assignment, and/or transfer must be satisfied under such applicable Contract or that any related right or benefit under such applicable Contract cannot or will not be available to the proposed assignee.**

Subject to the terms of the Bidding Procedures Order, an auction (the "**Auction**") for the Assets, including the Contracts, will be conducted on ~~March 30~~April 4, 2023, at ~~10:00~~ 9:00 a.m. (ET), at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801.  After the Auction, the Debtors will file and serve a notice that identifies the Winning Bidder for the Assets, including any Contracts.

**The Debtors will seek to assume and assign the Contracts that have been selected by the Winning Bidder (each, a "Selected Assigned Contract" and collectively, the "Selected Assigned Contracts") at a hearing before the Honorable [\*], in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, [\*] ([\*]th) Floor, Courtroom #[\*], Wilmington, Delaware 19801 (a "Sale Hearing") on [\*] at \* (ET), or such other date as determined by the Debtors, in consultation with the Stalking Horse Purchasers or, in the**

30084388.8

**event the Stalking Horse Purchasers are not the Winning Bidders, then in consultation with the Winning Bidder, in accordance with the terms of the Bidding Procedures Order**. To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Claim (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with the Winning Bidder, or fixed by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assigned Contract may be assumed by the Debtors and assigned to a Stalking Horse Purchaser or, in the event a Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidders, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidders, then the Winning Bidder, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

Dated: [*], 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_____

Michael R. Nestor (No. 3526)
Joseph Barry (No. 4221)
Matthew B. Lunn (No. 4119)
Joseph M. Mulvihill (No. 6061)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801
Tel.: (302) 571-6600
Facsimile: (302) 571-1253
Email:  mnestor@ycst.com
    jbarry@ycst.com
    mlunn@ycst.com
    jmulvihill@ycst.com

~~Proposed~~ Counsel for Debtors and Debtors in Possession

**EXHIBIT A to Assumption Notice**