**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Big Village Holding LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10174 (CTG)<br><br>(Jointly Administered)<br><br>Re: Docket No. 14 |

**ORDER (A) SCHEDULING A HEARING ON THE APPROVAL OF
THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER
THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES,
AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (B) APPROVING CERTAIN
BID PROCEDURES, BID PROTECTIONS, AND ASSUMPTION AND ASSIGNMENT
PROCEDURES, AND THE FORM AND MANNER OF NOTICE
THEREOF, AND (C) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of: (a) an order, (i) scheduling a hearing (the "**Sale Hearing**") on approval of the proposed sale(s) (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Assets**"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances, including the sale of the A&I Stalking Horse Assets to NMMB, Inc. (the "**A&I Stalking Horse Purchaser**") and the sale of the EMX Stalking Horse Assets to ZStream Acquisition LLC ("**EMX Stalking Horse Purchaser**" and together with the A&I Stalking Horse Purchaser, the "**Stalking Horse Purchasers**") or, in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Big Village Holding LLC (6595); Big Village Group Holdings LLC (5882); Big Village Group Inc. (6621); Big Village Insights, Inc. (8960); Big Village Media LLC (7288); EMX Digital, Inc. (5543); Big Village USA Corporation, Inc. (3414); Big Village Agency, LLC (0767); Balihoo, Inc. (9666); Deep Focus, Inc. (8234); and Trailer Park Holdings Inc. (1447). The Debtors' service address is 301 Carnegie Center, Suite 301, Princeton, NJ 80540.

[2] Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion.

30181381.2

event the Stalking Horse Purchasers are not the Winning Bidders for the Stalking Horse Assets, then to the Winning Bidder, and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assigned Contract**," and collectively, the "**Assigned Contracts**") in connection therewith; (ii) authorizing and approving certain bidding procedures for the Sale attached hereto as Exhibit 1 (collectively, the "**Bid Procedures**"), authorizing and approving certain bidding protections, including the payment of a breakup fee and expense reimbursement (the "**Bid Protections**"), and authorizing and approving certain assumption and assignment procedures for the Assigned Contracts provided for herein (collectively, the "**Assumption and Assignment Procedures**"), and (iii) granting related relief; and (b) one or more orders (each, a "**Sale Order**"), (i) authorizing and approving the Debtors' entry into the Asset Purchase Agreement attached to the Motion as Exhibit C (the "**A&I Stalking Horse APA**") with the A&I Stalking Horse Purchaser or, in the event the A&I Stalking Horse Purchaser is not the Winning Bidder for the A&I Stalking Horse Assets, then an Alternative APA with the Winning Bidder; (ii) authorizing and approving the Debtors' entry into the Asset Purchase Agreement attached to the Motion as Exhibit E (the "**EMX Stalking Horse APA**") with the EMX Stalking Horse Purchaser or, in the event the EMX Stalking Horse Purchaser is not the Winning Bidder for the EMX Stalking Horse Assets, then an Alternative APA with the Winning Bidder; (iii) authorizing and approving the Sale, free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances; (iv) authorizing and approving the assumption and assignment of the Assigned Contracts in connection therewith; and (v) granting related relief; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as set forth herein; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the

Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion; and the a hearing on the Motion having been held; and the Court having found and determined that the relief set forth herein is in the best interests of the Debtors, their estates and creditors and all parties in interest, and that the legal and factual bases set forth in the Motion and at the hearing on the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

### FOUND AND DETERMINED THAT:[3]

A. This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

B. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D. The Debtors have demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required except as otherwise provided

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

for herein. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E. The Sale Notice (as defined below), in substantially in the form attached hereto as Exhibit 2, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bid Procedures, the auction for the Assets (the "**Auction**"), the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F. The Bid Procedures are: (a) fair, reasonable, and appropriate; and (b) designed to maximize recovery with respect to the Sale.

G. The Debtors have articulated good and sufficient reasons for the Court to approve the payment of the Bid Protections, if necessary, to the Stalking Horse Purchasers in accordance with the Stalking Horse APAs. The Bid Protections approved herein are fair, reasonable, and provide a benefit to the Debtors' estates and stakeholders. If triggered in accordance with the terms of the Stalking Horse APAs, payment of the Bid Protections, under this Order and upon the conditions set forth in the Stalking Horse APAs and the Bid Procedures, are (a) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (b) reasonably tailored to encourage, rather than hamper, bidding for the Stalking Horse Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other potential bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Stalking Horse Assets subject to the Stalking Horse APAs, (c) of substantial benefit to the Debtors' estates and stakeholders, (d) reasonable and appropriate, (e) a

material inducement for, and conditions necessary to, ensure that the Stalking Horse Purchasers will continue pursuit of the proposed agreement to purchase the Stalking Horse Assets subject to the Stalking Horse APAs, and (f) reasonable in relation to the Stalking Horse Purchasers' lost opportunities resulting from the time and money spent pursuing such transaction.

H. The Bid Procedures, including the Bid Protections, were negotiated in good faith and at arms' length.

I. The Assumption and Assignment Procedures provided for herein and the Assumption Notice (as defined below), in substantially in the form attached hereto as <u>Exhibit 3</u>, are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption and Assignment Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined below).

J. Entry of this Order is in the best interests of the Debtors, their estates, their creditors, and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Those portions of the Motion seeking approval of (a) the Debtors' entry into the Stalking Horse APAs (subject to higher or otherwise better offers in accordance with this Order) and all of its terms, including the Bid Protections, (b) the Assumption and Assignment Procedures, (c) the Bid Procedures, (d) the date and time of the Sale Hearing, and (e) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the entry of this Order, substantially in the form attached hereto as <u>Exhibit 2</u> (the "**Sale Notice**"), and the notice of the Debtors' potential assumption and assignment of the Assigned Contracts, substantially in the form attached hereto as <u>Exhibit 3</u> (the "**Assumption and**

**Assignment Notice**") (subclauses (a) – (e) above, collectively, the "**Bidding and Auction Process**"), are hereby GRANTED to the extent set forth herein.

2. Any objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3. The Debtors are authorized to (a) designate NMMB, Inc. as the A&I Stalking Horse Purchaser, (b) to enter into the A&I Stalking Horse APA, subject to final Court approval at the Sale Hearing, (c) designate ZStream Acquisition LLC as the EMX Stalking Horse Purchaser, (d) to enter into the EMX Stalking Horse APA, subject to final Court approval at the Sale Hearing, and (e) grant the Bid Protections to each of the Stalking Horse Purchasers, in each case at any time prior to the Auction.

4. The Bid Procedures are hereby approved. The failure to specifically include or reference any particular provision of the Bid Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bid Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bid Procedures and this Order.

5. The Debtors shall have the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder; *provided* that, in the event the Debtors withhold or limit access to any such information, the Debtors shall be required to inform the official committee of unsecured creditors (the "**Committee**") and the Prepetition Secured

Parties, as soon as practicable, of the identity of the Qualifying Bidder and nature of the information being restricted or withheld. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bid Procedures or the Sale, provided that the information was provided in accordance with this Order.

6. For all purposes under the Bid Procedures: (a) the Stalking Horse Purchasers shall be considered Qualifying Bidders, and the Stalking Horse APAs shall be considered Qualifying Bids; (b) the Stalking Horse Purchasers are, and will be deemed to be, Qualifying Bidders for all purposes under the Bid Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchasers; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

7. The Bid Procedures shall apply to the Potential Bidders, the Qualifying Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale and the Auction.

8. The Bid Protections are approved as follows: (i) for the A&I Stalking Horse Purchaser: (a) a breakup fee in the amount of $350,000, and (b) an expense reimbursement in a reasonable amount not to exceed $250,000 (exclusive of any amounts paid to the A&I Stalking Horse Purchaser prior to the Petition Date), and (c) a work fee in the amount of $100,000 paid to

the A&I Stalking Horse Purchaser by the Debtors prior to the Petition Date (the "**Work Fee**"); and (ii) for the EMX Stalking Horse Purchaser: (a) break-up fee of three (3) percent of the cash consideration, and (b) an expense reimbursement of up to $150,000. The Bid Protections shall be paid pursuant to the terms of the Stalking Horse APAs. No entity, other than the Stalking Horse Purchasers, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, contribution, or other similar fee or payment.

9. The obligation of the Debtors to pay the Bid Protections: (a) shall be entitled to administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code, *provided* that the Bid Protections shall be payable directly out of the proceeds of, and as a precondition to an Alternative Transaction (as defined in the Stalking Horse APAs); (b) shall survive the termination of the applicable Stalking Horse APAs; and (c) shall be payable in accordance with the terms set forth in the Stalking Horse APAs.

10. Under no circumstances shall the Work Fee be recoverable by the Debtors, a chapter 11 or chapter 7 trustee, or any other successor or party in interest authorized to pursue the recovery of claims or actions arising under chapter 5 or any other provision of the Bankruptcy Code.

11. Notwithstanding anything to the contrary set forth herein or in any other document, pleading or other order of this Court, the Prepetition Agent, as collateral agent on behalf of the Prepetition Secured Parties, has agreed not to exercise and as a result shall not have the right to credit bid the Prepetition Secured Obligations on the Stalking Horse Assets, as long as the Stalking Horse Agreements have not been terminated. Notwithstanding the foregoing, the Prepetition Agent shall retain the right to credit bid the Prepetition Secured Obligations with

respect to any other portion of the Prepetition Collateral that is subject to the Prepetition Secured Liens (other than the Stalking Horse Assets).

12. The following "**Assumption and Assignment Procedures**" are hereby approved:

(a) On or before March 15, 2023 (the "**Assumption and Assignment Notice Deadline**"), the Debtors shall file with the Court and serve on any counterparty that is a party to an executory contract with the Debtors (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assigned Contract an Assumption and Assignment Notice.

(b) The Assumption and Assignment Notice shall include, without limitation, the cure claim (each, a "**Cure Claim**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assigned Contracts. If a Counterparty objects to (i) the assumption and assignment of the Counterparty's Assigned Contract, (ii) the Cure Claim for its Assigned Contract or (iii) the provision of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "**Contract Objection**") on or before the applicable objection deadline set forth in these Assumption and Assignment Procedures.

(c) On or before the Assumption and Assignment Notice Deadline, the Debtors shall provide the Adequate Assurance Information for the Stalking Horse Purchasers to all Counterparties whose Assigned Contracts are included in the Stalking Horse APAs and that are the subject of the Assumption and Assignment Notice.

(d) Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on March 29, 2023** (the "**Contract Objection Deadline**"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assigned Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

*\*Any objections to adequate assurance of performance by the Stalking Horse Purchasers shall be filed by the Contract Objection Deadline.\**

***Any objections to adequate assurance of future performance by a Winning Bidder other than the Stalking Horse Purchasers shall be filed in accordance with subparagraph (g) below.***

(e) The "**Objection Notice Parties**" are as follows: (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Joseph M. Mulvihill (jmulvihill@ycst.com)); (ii) proposed investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); (iii) counsel to the A&I Stalking Horse Purchaser, Ballard Spahr LLP, 919 N Market Street, 11th Floor, Wilmington, Delaware 19801 (Attn: Tobey M. Daluz (daluzt@ballardspahr.com)); (iv) counsel to the EMX Stalking Horse Purchaser, DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, Maryland 21209 (Attn: C. Kevin Kobbe (kevin.kobbe@dlapiper.com)); (v) counsel to the Prepetition Agent, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020-1001 (Attn: Brian Trust (btrust@mayerbrown.com) and Scott M. Zemser (szemser@mayerbrown.com) and Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108 (Attn. L. Katherine Good (kgood@potteranderson.com); (vi) proposed counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com)); and (vii) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Linda Richenderfer (Linda.Richenderfer@usdoj.gov)).

(f) As soon as practicable after the completion of the Auction, the Debtors shall file with the Court a notice identifying the Winning Bidder(s) (a "**Notice of Winning Bidder**"), which shall set forth, among other things, (i) the Winning Bidder(s) and Back-Up Bidder(s) (if any) and the amount of each of the Winning Bid(s) and the Back-Up Bid(s) (if any), (ii) the Selected Assigned Contracts, and (iii) the proposed assignee(s) of such Selected Assigned Contracts.

(g) Within twenty-four (24) hours after the completion of the Auction, the Debtors will cause to be served by overnight mail and, if available, electronic mail, upon each affected Counterparty and its counsel (if known) the Notice of Winning Bidder.

***In the event that a Winning Bidder is not a Stalking Horse Purchaser, the Counterparties shall file any Contract Objections <u>solely</u> on the basis of adequate assurance of future performance not later than <u>April 5, 2023, at noon (ET)</u>.***

(h) At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder(s), of only those Assigned Contracts that have been selected by the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder(s), to be assumed and assigned (each, a "**Selected Assigned**

**Contract**," and collectively, the "**Selected Assigned Contracts**"). The Debtors and their estates reserve any and all rights with respect to any Assigned Contracts that are not ultimately designated as Selected Assigned Contracts.

(i) If no Contract Objection is timely received with respect to a Selected Assigned Contract: (i) the Counterparty to such Selected Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder); (ii) any and all defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Claim for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Claim and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against the Debtors and their estates or the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder for such Selected Assigned Contract, or the property of any of them, that existed prior to the entry of the Sale Order.

(j) To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with Winning Bidder(s), or fixed by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assigned Contract may be assumed by the Debtors and assigned to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder for such Selected Assigned Contract, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then the Winning Bidder for such Selected Assigned Contract, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(k) Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the Debtors are determined to be Assigned Contracts, as soon as practicable thereafter,

the Debtors shall file with the Court and serve, by regular mail, on the Counterparties an Assumption and Assignment Notice, and such Counterparties shall file any Contract Objections not later than fourteen (14) days thereafter. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Assigned Contracts to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidder, then to the Winning Bidder, without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

13. The Debtors' decision to assume and assign the Assigned Contracts to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder(s), is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Assigned Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

14. The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The Assumption and Assignment Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder(s), some or all of the Assigned Contracts, and (ii) afford the Counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

15. The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an

executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

16. The Sale Notice, the Assumption and Assignment Notice, the Bid Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bid Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then to the Winning Bidder, of the Assigned Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

17. The Sale Notice is approved. Within two (2) business days of the entry of this Order, the Debtors shall serve the Sale Notice by regular mail on: (a) the Office of the United States Trustee for Region III; (b) counsel to the Stalking Horse Purchasers; (c) all parties known by the Debtors to assert a lien or encumbrance on any of the Assets; (d) all persons known or reasonably believed to have asserted an interest in or claim to any of the Assets; (e) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (f) the Office of the United States Attorney for the District of Delaware; (g) the Office of the Attorney General in each state in which the Debtors have operated; (h) the Office of the Secretary of State in each state in which the Debtors have operated; (i) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (j) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection

Agency; (k) the Federal Trade Commission; (l) the United States Attorney General/Antitrust Division of Department of Justice; (m) all non-Debtor parties to any of the Assigned Contracts; (n) all of the Debtors' other known creditors and equity security holders; (o) counsel to the prepetition lender; (p) counsel to the Committee; and (q) all other parties that have filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date (collectively, the "**Sale Notice Parties**").

18. The Debtors shall post the Sale Notice, the Assumption and Assignment Notice, and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Kroll, LLC at https://cases.ra.kroll.com/bigvillage. Within seven (7) business days of the entry of this Order, or as soon as reasonably practicable, the Debtors shall cause the Sale Notice to be published once in the national edition of *USA Today* or other similar publication. Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

19. Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on March 29, 2023** (the "**Sale Objection Deadline**"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. If a Sale Objection is not

filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and being heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

20. Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by the Stalking Horse APAs or any Alternative APA with a Winning Bidder other than the Stalking Horse Purchasers, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

21. As part of its bid, each Qualifying Bidder must provide the Debtors, the other Bidding Procedures Notice Parties, and the Consultation Parties[4] information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to such Qualifying Bidder; and (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance. To the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the financial and other information supporting the Qualifying Bidder's financial wherewithal

---

[4] The "**Consultation Parties**" are the Prepetition Secured Parties and the Committee; *provided* that to the extent any Prepetition Secured Party is or seeks to be a Qualifying Bidder (a "**Bidding Secured Party**"), such Bidding Secured Party shall not be a Consultation Party with respect to the assets and transaction for which the Bidding Secured Party is or seeks to become a Qualifying Bidder and the Debtors and the Agent shall take reasonable steps to ensure the Bidding Secured Party does not receive information with respect to other Qualifying Bidders for such transaction; *provided further* that, and for the avoidance of doubt, the Prepetition Secured Parties excluding the Bidding Secured Party shall continue to be Consultation Parties.

shall include financial and other information supporting the financial wherewithal of the Qualifying Bidder's parent company or sponsor.

22. Any party in receipt of Adequate Assurance Information under this Order shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Order and the Bid Procedures. Such Counterparty may not use or disclose, except to representatives, attorneys, advisors and financing sources (collectively, "**Representatives**"), any confidential Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; and (b) in support of any objection (the "**Assignment Objection**") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance. Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). The party filing an Assignment Objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d). The unredacted versions of such Assignment Objections shall be served upon the Debtors, the other Bidding Procedures Notice Parties, the Consultation Parties and the U.S. Trustee, with a copy to the Court's chambers; provided further, that all rights of all parties in interest in these Chapter 11 Cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter. Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

23.     If no timely Qualifying Bids other than the Stalking Horse APAs are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that this Court approve the Stalking Horse APAs and the transactions contemplated thereunder.  If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse APAs, then the Debtors shall conduct the Auction on **April 4, 2023, at 9:00 a.m. (ET)**, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined below).  Only the Debtors, the Auction Bidders (including the Stalking Horse Purchasers), the Consultation Parties, the United States Trustee for the District of Delaware, and any creditors of the Debtors who provide the Debtor notice of intent to attend the auction in accordance with the Bid Procedures, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "**Auction Participants**"); provided that any such creditors provide counsel for the Debtors written notice of their intent to attend the Auction no later than 5:00 p.m. (ET) the day prior to the Auction.

24.     The Debtors shall have until **April 5, 2023, at 4:00 p.m. (ET)** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

25.     The Sale Hearing shall be held in this Court on **April 6, 2023 at 10:00 a.m. (ET)**, unless otherwise determined by this Court.  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties and the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidders, then in consultation with the Winning Bidder, from time to time without further notice to creditors or other parties in interest

other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these Chapter 11 Cases.

26. The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

27. In the event that there is a conflict between this Order or the Bid Procedures, on the one hand, and the Motion, the Stalking Horse APAs, or an Alternative APA, on the other hand, this Order and the Bid Procedures shall control and govern. If there is a conflict between this Order and the Bid Procedures, this Order shall control and govern. If there is a conflict between this Order or the Bid Procedures, on the one hand, and any notice served in connection with the Motion or this Order, on the other hand, this Order and the Bid Procedures shall control and govern.

28. Prior to mailing the Assumption and Assignment Notice and the Sale Notice, as applicable, the Debtors, in consultation with the Stalking Horse Purchasers, may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

29. This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in its sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

30. The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

31. Attached hereto as <u>Schedule A</u> is a summary of the key dates established by this Order, *provided, however*, that the right of the Committee to seek to move or extend any such key date is fully preserved.

32. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

**Dated: March 13th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**