# EXHIBIT 1

**Bidding Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Big Village Holding LLC, *et al.*,[1] | Case No. 23-10174 |
| Debtors. | (Jointly Administered) |

## BID PROCEDURES

On February 8, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [\*], the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. \*] (the "**Bidding Procedures Order**"), among other things, granting certain relief requested in the related motion [Docket No. 14] (the "**Bidding Procedures Motion**"), including authorizing the Debtors to solicit bids and approving the procedures set forth herein (collectively, the "**Bid Procedures**") to be employed by the Debtors in connection with the proposed sale (the "**Sale**") of all or substantially all of the Debtors' assets (the "**Assets**"), including (i) the sale of certain assets related to the Debtors' Agency and Insights businesses (the "**A&I Stalking Horse Assets**") to NMMB, Inc. (the "**A&I Stalking Horse Purchaser**"); and (ii) the sale of certain assets related to the Debtors' managed digital marketing services businesses (the "**EMX Stalking Horse Assets**" and collectively with the A&I Stalking Horse Assets, the "**Stalking Horse Assets**") to ZStream Acquisition LLC (the "**EMX Stalking Horse Purchaser**" and together with the A&I Stalking Horse Purchaser, the "**Stalking Horse Purchasers**"), free and clear of all Encumbrances other than Assumed Liabilities.[2] The Stalking Horse APAs are attached to the Bidding Procedures Motion as <u>Exhibits C and E</u>.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS, INCLUDING THE STALKING HORSE ASSETS, SHOULD CONTACT:**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are: Big Village Holding LLC (6595); Big Village Group Holdings LLC (5882); Big Village Group Inc. (6621); Big Village Insights, Inc. (8960); Big Village Media LLC (7288); EMX Digital, Inc. (5543); Big Village USA Corporation, Inc. (3414); Big Village Agency, LLC (0767); Balihoo, Inc. (9666); Deep Focus, Inc. (8234); and Trailer Park Holdings Inc. (1447). The Debtors' service address is 301 Carnegie Center, Suite 301, Princeton, NJ 80540.

[2] Capitalized terms used but not yet defined herein shall have the meaning ascribed to such terms below. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

(A) **SACHIN LULLA (SACHIN.LULLA@STEPHENS.COM) OF STEPHENS INC. INVESTMENT BANKER FOR THE DEBTORS; AND/OR**

(B) **MICHAEL R. NESTOR, ESQ. (MNESTOR@YCST.COM); JOSEPH BARRY, ESQ. (JBARRY@YCST.COM), OR JOSEPH M. MULVIHILL, ESQ. (JMULVIHILL@YCST.COM) OF YOUNG CONAWAY STARGATT & TAYLOR, LLP, COUNSEL FOR THE DEBTORS.**

*Summary of Key Dates Established by Bidding Procedures*

| DATE | DEADLINE/EVENT |
|---|---|
| **March 15, 2023** | Assumption Notice Deadline |
| **March 29, 2023 at 4:00 p.m. (ET)** | Sale Objection Deadline; Contract Objection Deadline[3] |
| **April 3, 2023, at 10:00 a.m. (ET)** | Bid Deadline |
| **April 3, 2023, at 4:00 p.m. (ET)** | Deadline for Debtor to Designate Qualifying Bids and Baseline Bid |
| **April 4, 2023, at 9:00 a.m. (ET)** | Auction |
| **As soon as practicable after completion of the Auction** | Deadline to File and Serve Notice of Winning Bidder |
| **April 5, 2023, at noon (ET)** | Adequate Assurance Objection Deadline for Winning Bidder Other Than the Stalking Horse Purchaser |
| **April 5, 2023, at 4:00 p.m. (ET)** | Debtors' Deadline to Reply to Sale Objections |
| **April 6, 2023, at 10:00 a.m. (ET)** | Sale Hearing |
| **April 20, 2023** | Sale Closing |

---

[3] The Sale Objection Deadline and Contract Objection Deadline apply to all objections to the sale of the Assets and the assumption and assignment of the Assigned Contracts (including adequate assurance of future performance by the Stalking Horse Purchasers), with the exception of objections related to adequate assurance of future performance by a Winning Bidder *other than* the Stalking Horse Purchasers.

1. **Stalking Horse Purchasers**

On February 7, 2023, the Debtors entered into the Stalking Horse APAs with the Stalking Horse Purchasers for the sale of the Stalking Horse Assets. As set forth more fully in the Stalking Horse APAs, (i) the A&I Stalking Horse Purchaser is paying $12 million in cash, assuming certain liabilities and executory contracts, and satisfying all cure costs (the "**A&I Purchase Price**"); and (ii) the EMX Stalking Horse Purchaser is paying $2.1 million in cash, acquiring certain outstanding accounts receivables on a dollar-for-dollar basis, assuming certain liabilities and executory contracts, and satisfying all cure costs (the "**EMX Purchase Price**"). The Stalking Horse APAs also include various customary representations, warranties and covenants by and from the Debtors and the Stalking Horse Purchasers, and certain conditions to closing and rights of termination related to the Sales and these Chapter 11 Cases generally.

2. **Assets to be Sold**

The Debtors shall offer for sale all of the Assets, including the Stalking Horse Assets, provided that the Debtors determine, in consultation with the prepetition secured parties (the "**Prepetition Secured Parties**") and the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "**Committee**," and together with the Prepetition Secured Parties and the Debtors, the "**Consultation Parties**"), that the aggregate consideration offered by any bid, or combination of bids, for the Assets, satisfies the requirements set forth in these Bid Procedures. **Potential Bidders may bid on all or any number or combination of the Assets, including the Stalking Horse Assets.**

3. **Participation Requirements**

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder**". To become a Qualifying Bidder, and thus being able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"), a Potential Bidder must submit to the Debtors, the Consultation Parties, and their advisors:

(a) documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(b) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(c) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that the interested party has a *bona fide* interest in consummating a sale transaction; and

(d) sufficient information, as determined by the Debtors, after consultation with the Consultation Parties, to allow the Debtors to determine that the interested party (x) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their reasonable discretion), and (y) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bid Procedures: (i) the Stalking Horse Purchasers shall be considered Qualifying Bidders for the Stalking Horse Assets, and the Stalking Horse APAs shall be considered Qualifying Bids for the Stalking Horse Assets and for all purposes under the Bid Procedures, without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchasers; and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets, including the Stalking Horse Assets.

### 4. **Bankruptcy Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bid Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of such parties; (b) bring any such action or proceeding in the Court; and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

### 5. **Form of Agreement for Sale of the Assets, Including the Stalking Horse Assets**

Potential Bidders should reference the applicable Stalking Horse APA in connection with a bid that includes the sale of the Stalking Horse Assets or any combination of Assets. As set forth below, Potential Bidders intending to submit bids that include the Stalking Horse Assets or any combination of Assets must include with their bids:

(a) a statement that such Potential Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse APA; and

(b) a clean and duly executed asset purchase agreement (an "**Alternative APA**") and a marked copy of the Alternative APA that reflects any variations from the applicable Stalking Horse APA.

6. **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (a) investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); and/or (b) counsel for the Debtors, Michael R. Nestor, Esq. (mnestor@ycst.com); Joseph Barry, Esq. (jbarry@ycst.com), and Joseph M. Mulvihill, Esq. (jmulvihill@ycst.com).

The due diligence period shall extend through and including the Bid Deadline. The Debtors, in their business judgment, may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determines is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder; *provided* that, in the event the Debtors withhold or limit access to any such information, the Debtors shall be required to inform the Consultation Parties, as soon as practicable, of the identity of the Qualifying Bidder and nature of the information being restricted or withheld. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bid Procedures and the Sale.

7. **Bid Requirements**

Other than in the case of the Stalking Horse Purchasers and the Stalking Horse APAs, which shall be considered Qualifying Bidders and Qualifying Bids, respectively, for all purposes under the Bid Procedures, without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchasers, to be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a) be in writing;

(b) fully disclose the identity of the Qualifying Bidder (and to the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the identity of the Qualifying Bidder's parent company or sponsor), and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wishes to discuss the bid

30181504.2

5

submitted by the Qualifying Bidder;

(c) set forth the purchase price to be paid by such Qualifying Bidder;

(d) not propose payment in any form other than cash;

(e) state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(f) specify the Assets that are included in the bid and state that such Qualifying Bidder offers to (i) purchase all of the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estate than, the terms set forth in the applicable Stalking Horse APA;

(g) be accompanied by an Alternative APA that reflects any variations from the applicable Stalking Horse APA;

(h) state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale;

(i) state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Alternative APA and provide written evidence in support thereof;

(j) contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the Alternative APA, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve such information on any counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale within one (1) business day after the Debtors' receipt of such information. To the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the financial and other information supporting the Qualifying Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Qualifying Bidder's parent company or sponsor;

(k) (A) identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the Alternative APA, (B) provide for the payment of cure costs related to such executory contracts and unexpired leases, and (C) demonstrate, in the Debtors' reasonable business judgment, after consultation with

the Consultation Parties, that the Qualifying Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases;

(l) a commitment to close the transactions contemplated by the Alternative APA by no later than April 20, 2023;

(m) not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of fee or payment;

(n) if the Alternative APA contemplates the purchase of the A&I Stalking Horse Assets, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the A&I Purchase Price, (B) the A&I Bid Protections, and (C) $100,000;

(o) if the Alternative APA contemplates the purchase of the EMX Stalking Horse Assets, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the EMX Purchase Price, (B) the EMX Bid Protections, and (C) $50,000;

(p) if the Alternative APA contemplates the purchase of a combination of both the A&I Stalking Horse Assets and the EMX Stalking Horse Assets, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the Purchase Price set forth in the Stalking Horse APAs, (B) the Bid Protections, and (C) $150,000;

(q) not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

(r) contain written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Alternative APA, with appropriate contact information for such financing sources;

(s) contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bid Procedures and the Sale, and (iv) the sale of the Assets on an "as-is, where-is" basis;

(t) sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approvals required for the

Qualifying Bidder to close the transactions contemplated by the Alternative APA, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's Alternative APA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); provided that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Alternative APA; provided, further that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

(u) provides for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Winning Bid, in accordance with the terms of the Alternative APA;

(v) includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Alternative APA;

(w) provides a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the Alternative APA (or such additional amount as may be determined by the Debtors in consultation with the Consultation Parties) *provided, however*, that the Stalking Horse Purchasers are not required to make any additional deposit; and

(x) provides that in the event of the Qualifying Bidder's breach of, or failure to perform under, the Alternative APA, the Debtors and their estates shall be entitled to retain the Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

8. **Bid Deadline**

A Qualifying Bidder, other than the Stalking Horse Purchasers, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties (as defined below) and the Consultation Parties so as to be received on or before **April 3, 2023, at 10:00 a.m.** (the "**Bid Deadline**"), provided that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of the Chapter 11 Cases indicating the same. **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

9. **Evaluation of Qualifying Bids**

The Debtors will deliver, within one (1) calendar day after receipt thereof, copies of all bids from Qualifying Bidders to the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid.

No later than April 3, 2023, at 4:00 p.m., the Debtors shall: (i) notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**," and the Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall promptly notify any Stalking Horse Purchasers and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

10. **No Qualifying Bids**

If no timely Qualifying Bids other than any Stalking Horse Purchasers' Qualifying Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Stalking Horse APAs and the transactions contemplated thereunder.

11. **Auction**

If the Debtors timely receive competing Qualifying Bids for any Assets, then the Debtors shall conduct an Auction (the "**Auction**"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors: (a) the number, type and nature of any changes to the Stalking Horse APAs requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other

approval; (e) the net benefit to the Debtors' estates; and (f) any other factors the Debtors, after consultation with the Consultation Parties, may reasonably deem relevant.

The Auction shall be governed by the following procedures:

(a) the Auction shall be held on **April 4, 2023, at 9:00 a.m. (ET)** at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801 or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined below), provided that Qualified Bidders shall be entitled to attend the Auction via video conference;

(b) only the Stalking Horse Purchasers and the other Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c) the Auction Bidders shall appear at the Auction, or through a duly authorized representative;

(d) only the Debtors, the Auction Bidders, the Consultation Parties, the Office of the United States Trustee for the District of Delaware, and any creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "**Auction Participants**"); provided that any such creditors provide counsel for the Debtors written notice of their intent to attend the Auction no later than noon (ET) the day prior to the Auction;

(e) the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f) the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bid Procedures, the Auction or the Sale;

(g) bidding shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least $150,000, $100,000, or $50,000, as may be applicable under the Bidding Procedures, provided that: (i) each such successive bid must be a Qualifying Bid; and (ii) the Debtors shall retain the right to modify the bid increment requirements at the Auction after consultation with the Consultation Parties;

(h) In any successive bid by the Stalking Horse Purchasers, the amount of the Bid Protections shall be included in the calculation of such bid;

(i) the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(j) all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors

shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(k) the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(l) each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(m) the Auction Bidders shall have the right to make additional modifications to the Stalking Horse APAs or any Alternative APA, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse APAs, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Winning Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(n) the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Stalking Horse APAs or any Alternative APA, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(o) upon the conclusion of the Auction, the Debtors shall determine, in consultation

with the Consultation Parties and subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction (the "**Winning Bid**"). In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the assumption of liabilities, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse APAs or any Alternative APA submitted with the Winning Bid, as applicable, requested by each bidder, and the net benefit to the Debtors' estate. The bidder submitting such Winning Bid at the Auction shall become the "**Winning Bidder**," and shall have such rights and responsibilities of the purchaser as set forth in the Stalking Horse APAs or any Alternative APA, as applicable. The Debtors may, in their business judgment and in consultation with the Consultation Parties, designate the Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Assets in the event that the Winning Bidder does not close the Sale;

(p) within one (1) business bay of the close of the Auction, in the event the Stalking Horse Purchasers are not the Winning Bidders, the Winning Bidder shall supplement the Winning Bidder's Deposit such that the Deposit shall be equal to an amount that is ten (10%) percent of the Winning Bid; and

(q) prior to the Sale Hearing, the Winning Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Winning Bid was made.

**THE WINNING BID AND ANY BACK-UP BID AND THEIR RELATED PURCHASE AGREEMENTS SHALL EACH CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE WINNING BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE WINNING BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

12. <u>**Sale Hearing**</u>

The Winning Bid and any Back-Up Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchasers is received, then the Stalking Horse APAs) will be subject to approval by the Court. The Sale Hearing to approve the Winning Bid and any Back-Up Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchasers is received, then the Stalking Horse APAs) shall take place on **April 6, 2023, at 10:00 a.m**. The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties and the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidder, then in consultation with the Winning Bidder, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these Chapter 11 Cases.

At the Sale Hearing, the Debtors will seek entry of an order that, among other things authorizes and approves the Sale to the Stalking Horse Purchasers or, in the event the Stalking Horse Purchasers are not the Winning Bidder, then to the Winning Bidder, pursuant to the terms and conditions set forth in the Stalking Horse APAs or Alternative APA submitted by the Winning Bidder, as applicable.

13. **Backup Bidder**

Notwithstanding any of the foregoing, in the event that the Winning Bidder fails to close the Sale on or before April 20, 2023 (or such date as may be extended by the Debtors), the Back-Up Bid will be deemed to be the Winning Bid, the Back-Up Bidder will be deemed to be the Winning Bidder, and the Debtors shall be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

14. **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as the Winning Bidder or the Back-Up Bidder no later than five (5) business days following the conclusion of the Auction. The Deposit of the Back-Up Bidder shall be returned no later than five (5) business days following the closing of the Sale. The deposit of the Winning Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Alternative APA or any Stalking Horse APA or any Alternative APA, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Winning Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

15. **Notice and Consultation Parties**

The term "**Bid Procedures Notice Parties**" as used in these Bidding Procedures shall mean: (i) Big Village Group, Inc., 301 Carnegie Center, Suite #301, Princeton, NJ 08540 (Attn: Kasha Cacy, Chief Executive Officer); (ii) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com), Joseph Barry (jbarry@ycst.com), and Joseph M. Mulvihill (jmulvihill@ycst.com)); (iii) proposed investment banker for the Debtors, Stephens Inc., Sachin Lulla (Sachin.Lulla@stephens.com); (iv) counsel to the A&I Stalking Horse Purchaser, Ballard Spahr LLP, 919 N. Market Street, 11th Floor, Wilmington, DE 19801-3034 (Attn: Tobey Marie Daluz (daluzt@ballardspahr.com)); (v) counsel to the EMX Stalking Horse Purchaser, DLA Piper LLP (US), 6225 Smith Avenue, Baltimore, Maryland 21209 (Attn: C. Kevin Kobbe (kevin.kobbe@dlapiper.com)); (vi) counsel to the Prepetition Agent, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020-1001 (Attn: Brian Trust (btrust@mayerbrown.com) and Scott M. Zemser (szemser@mayerbrown.com) and Potter

Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108 (Attn. L. Katherine Good (kgood@potteranderson.com); and (vii) proposed counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Jeffrey N. Pomerantz (jpomerantz@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com)).

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bid Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Prepetition Secured Party, the collateral agent on behalf of the Prepetition Secured Parties, or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bid Procedures will be waived without further action; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of the Committee submits a Qualifying Bid, the Committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets to which such Committee member submitted a Qualifying Bid and shall not provide any information regarding the sale of the Assets to such member.

## 16. Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify the Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.