## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Big Village Holding LLC, *et al.*,[1] | Case No. 23-10174 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 12, 40, 54, & 112** |

### FINAL ORDER (A) AUTHORIZING THE
### DEBTORS' USE OF CASH COLLATERAL; (B) GRANTING
### ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES;
### (C) SCHEDULING A FINAL HEARING; AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an interim order (the "**Interim Order**") and a final order (this "**Final Order**"), pursuant to sections 105, 361, 362, 363, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, *inter alia*:

> a.     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), and all other Prepetition Collateral (as defined herein), in accordance with the terms of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Big Village Holding LLC (6595); Big Village Group Holdings LLC (5882); Big Village Group Inc. (6621); Big Village Insights, Inc. (8960); Big Village Media LLC (7288); EMX Digital, Inc. (5543); Big Village USA Corporation, Inc. (3414); Big Village Agency, LLC (0767); Balihoo, Inc. (9666); Deep Focus, Inc. (8234); and Trailer Park Holdings Inc. (1447).  The Debtors' service address is 301 Carnegie Center, Suite 301, Princeton, NJ 80540.

this Final Order and the Approved Budget (as defined herein), as provided herein;

b.    to, subject to the Carve-Out (as defined herein) and any Permitted Prior Liens (as defined herein), provide Adequate Protection (as defined herein) of the liens and security interests (such liens and security interests, the "**Prepetition Secured Liens**") of the prepetition lenders (such financial institutions in such capacities, the "**Prepetition Lenders**") under that certain Amended and Restated Credit and Guaranty Agreement, dated as of November 17, 2020 (as amended by that certain Amendment No. 1 to Credit Agreement, dated as of March 2021, as further amended by that certain Amendment No. 2 and Limited Consent, dated as of February 22, 2022, as further amended by that certain First Amendment to Amendment No. 2 and Limited Consent, dated as of September 1, 2022, and as the same may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and together with all other related documents, guarantees, and agreements, including, without limitation, security agreements, mortgages, pledge agreements, assignments, financing statements, and other agreements, documents, instruments or certificates executed in connection with the Prepetition Credit Agreement, the "**Prepetition Financing Documents**"), by and among Debtor Big Village Group Inc., EMX Digital, Inc., Big Village Insights, Inc., Big Village Group Holdings, LLC, and certain subsidiaries party thereto as borrowers (the "**Prepetition Borrowers**"), the Prepetition Lenders, and BNP Paribas ("**BNPP**") as administrative agent (in such capacity, the "**Agent**," and together with the Prepetition Lenders, the "**Prepetition Secured Parties**"), on the terms as more fully set forth in the Interim Order and this Final Order;

c.    subject to entry of this Final Order, except to the extent of the Carve-Out, waiving the Debtors' ability to surcharge any of the Prepetition Collateral or Postpetition Collateral (both as defined herein) pursuant to sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

d.    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and this Final Order;

e.    waiving the equitable doctrine of "marshaling" and any other similar doctrine for the benefit of any party other than the Prepetition Secured Parties;

f.    subject to Challenge (as defined herein and subject to the limitations specified herein), approving certain stipulations by the Debtors with respect to the Prepetition Financing Documents and the Prepetition Secured Liens;

g.      that this Court hold a final hearing (the "**Final Hearing**") to consider entry of this Final Order granting the relief requested in the Motion on a final basis; and

h.      waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

and the Interim Hearing having been held by this Court on February 9, 2023; and the Court having entered the Interim Order on February 9, 2023 [Docket No. 40]; and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the relief sought at the Interim Hearing having been given under the particular circumstances by the Debtors; this Court having considered the Motion, Interim Order, and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing and Final Hearing; and all objections, if any, to the relief requested in the Motion on a final basis having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

## THIS COURT HEREBY FINDS AS FOLLOWS:

A.      On February 8, 2023 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      On February 24, 2023, the Office of the United States Trustee for Region III (the "**U.S. Trustee**") appointed an official committee of unsecured creditors ("**Committee**"), as provided for under section 1102 of the Bankruptcy Code, in the Chapter 11 Cases.

C.      In requesting the use of Cash Collateral, and in exchange for and as a material inducement to the consent of the Prepetition Secured Parties to the use of their Cash

Collateral, subject to Paragraph 12 below, the Debtors, for themselves, their estates, and all representatives of such estates, acknowledge, admit, stipulate, and agree that:

(1) *Prepetition Secured Obligations*. As of the Petition Date, the Prepetition Borrowers were indebted and liable, without defense, counterclaim, or offset of any kind, to the Prepetition Secured Parties under the Prepetition Financing Documents, for (a) an aggregate principal amount of $49,291,858.41 of 2020 Term Loans (as defined in the Prepetition Credit Agreement) and (b) accrued and unpaid interest, fees (including, without limitation, Agency Fees (as defined herein)), and costs, expenses (including any attorneys' and financial advisors' fees), charges, indemnities, and all other Obligations (as defined in the Prepetition Credit Agreement) incurred or accrued pursuant to, and in accordance with, the Prepetition Credit Agreement. All obligations of the applicable Debtors (including the Prepetition Borrowers and all guarantors under the Prepetition Credit Agreement) arising under the Prepetition Financing Documents, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses, and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Secured Parties by the applicable Debtor, of any kind or nature, whether or not evidenced by any note, agreement, or other instrument, shall be referred to herein collectively as the "**Prepetition Secured Obligations**."

(2) *Liens and Collateral*. Pursuant to and as more particularly described in those certain Collateral Documents (as defined in the Prepetition Credit Agreement, as amended, restated, supplemented, or otherwise modified from time to time), each applicable Debtor granted to the Agent, for the benefit of the Prepetition Secured Parties, to secure the Prepetition Secured Obligations, Prepetition Secured Liens on the Collateral (as defined in the Prepetition Credit Agreement), including assets of the applicable Debtors as more fully described in the Prepetition

Financing Documents, including all of the applicable Debtors' right, title, and interest in all or substantially all of such Debtors' property, including real property, personal property, and fixtures (such collateral, collectively, the "**Prepetition Collateral**"), and, as of the Petition Date, such Prepetition Secured Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens senior by operation of law or otherwise permitted by the Prepetition Financing Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Secured Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, collectively, the "**Permitted Prior Liens**").  For the avoidance of doubt, any and all of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located constitutes Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (including, without limitation, cash or cash equivalents generated by the sale or other disposition of Prepetition Collateral or on deposit or maintained by the Debtors in any account or accounts over which the Prepetition Secured Parties have control, and all income, proceeds, products, rents, or profits of any Prepetition Collateral).

(3)    *Validity of Prepetition Secured Liens and Prepetition Secured Obligations*.  The Prepetition Secured Liens are (a) valid, binding, perfected, duly recorded, and enforceable liens on, and security interests in, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, set-off, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person

or entity. The Prepetition Secured Liens were granted for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Prepetition Financing Documents. The Prepetition Secured Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the applicable Debtors, enforceable against them in accordance with their respective terms, and no portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the Obligations owing under the Prepetition Financing Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, set-off, offset, subordination (whether equitable, contractual, or otherwise), recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law. The Prepetition Secured Obligations constitute allowed secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(4)     *No Control*.   Prior to and as of the date hereof, none of the Prepetition Secured Parties control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Final Order or the Prepetition Financing Documents.

(5)     *No Challenges/Claims*.   No offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Secured Liens or Prepetition Secured Obligations exist, and no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim, or counterclaim of any kind or nature to any of the

Prepetition Secured Liens or Prepetition Secured Obligations exist. The Debtors do not possess, and shall not assert, any claim, counterclaim, setoff, objection, challenge, or defense of any kind, nature, or description that would in any way affect the validity, priority, perfection, enforceability, or non-avoidability of any Prepetition Secured Obligations.

(6)     *Adequate Protection for the Prepetition Secured Parties*. The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) to the fullest extent permitted under the Bankruptcy Code (each such diminution in value, a "**Diminution in Value**"). As adequate protection therefor, the Prepetition Secured Parties will receive the adequate protection described in this Final Order (including the adequate protection set forth in Paragraph 14 hereof). In exchange for such adequate protection, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in this Final Order. The adequate protection provided herein and other benefits and privileges contained herein are consistent with, and authorized by, the Bankruptcy Code and are necessary to obtain such consent.

D.     The Debtors have an immediate and critical need to use Cash Collateral to, among other things, pay the costs and expenses associated with administering the Chapter 11 Cases, continue the orderly operation of the Debtors' business, maximize and preserve the Debtors' going concern value, make payroll and satisfy other working capital and general corporate purposes, in each case, in accordance with the Approved Budget, and to provide Adequate Protection (as defined herein). Without access to the continued use of Cash Collateral to the extent authorized pursuant to this Final Order, the Debtors and their estates would suffer

immediate and irreparable harm. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of Cash Collateral. The Debtors require the continued use of Cash Collateral under the terms of this Final Order to satisfy their postpetition liquidity needs.

E.  The Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Final Order. Accordingly, after considering all of their practical alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the consensual use of Cash Collateral represents the best source of funding currently available to the Debtors.

F.  Furthermore, the Prepetition Secured Parties agree that the Adequate Protection granted to the Prepetition Secured Parties in this Final Order is reasonable and calculated to protect the interests of the Prepetition Secured Parties, subject to the rights of the Prepetition Secured Parties to seek a modification of such Adequate Protection, as set forth below.

G.  Good cause has been shown for entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b). In particular, the authorization granted herein for the Debtors to continue using the Prepetition Collateral, including Cash Collateral, is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Entry of this Final Order is in the best interest of the Debtors, their estates, and their creditors. The terms of the Debtors' continued use of the Prepetition Collateral (including Cash Collateral), the terms of Adequate Protection to be granted to the Prepetition Secured Parties hereunder, and the Cash Collateral arrangements described herein pursuant to this Final Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent

with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto.

H.      The Debtors and the Prepetition Secured Parties have negotiated the terms and conditions of the Debtors' continued use of the Prepetition Collateral (including Cash Collateral) as contemplated by this Final Order in good faith and at arm's length, and the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral shall be deemed to have been made in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to receive Adequate Protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any Diminution in Value.

I.      Based on the foregoing, and upon the record made before this Court at the Interim Hearing and Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**[2]

1.      <u>Jurisdiction and Venue</u>.  Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      <u>Notice</u>.  As evidenced by the affidavits of service appearing at Docket Nos. 27 and 53, on February 8, 2023 and February 10, 2023, the Debtors provided notice of the Motion, entry of the Interim Order, and of the Final Hearing by electronic mail, facsimile, hand delivery, or overnight delivery to the following parties and/or to their counsel as indicated below:  (a) the

---

[2]      Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact.

U.S. Trustee; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) counsel to the Stalking Horse Bidders (as defined herein); (d) counsel to the Prepetition Secured Parties; (e) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (f) the local office for the Internal Revenue Service; and (g) any party having filed requests for notice in the Chapter 11 Cases (collectively, the "**Notice Parties**").  Given the nature of the relief sought in the Motion, the form, scope, and timing of the foregoing notice was due and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Final Hearing, Motion, or entry of this Final Order is necessary or required.

3.     The Approved Budget.

(a)     The use of proceeds of the Prepetition Collateral (including Cash Collateral), is subject to a 13-week operating budget setting forth the projected financial operations of the Debtors, which budget shall be in form and substance reasonably satisfactory to the Prepetition Secured Parties constituting the "Required Lenders" under, and as defined in, the Prepetition Credit Agreement (the "**Required Prepetition Secured Parties**"), substantially in the form of the initial budget annexed hereto as <u>Exhibit 1</u> (the "**Initial Budget**," and as may be amended and extended from time to time as set forth herein, the "**Approved Budget**") subject to the following permitted variances (collectively, the "**Permitted Variances**"):  unless waived in writing by the Required Prepetition Secured Parties, (i) an unfavorable variance of no more than 15% with respect to cumulative cash receipts on a rolling four (4)-week basis, tested weekly based upon the prior Approved Budget, and (ii) an unfavorable variance of no more than 15% with respect to cumulative cash disbursements (other than restructuring professional fees and payments to the U.S. Trustee set forth in the Approved Budget), tested weekly based upon the prior Approved

Budget.

(b)      The Debtors shall provide the Prepetition Secured Parties with an updated budget every four (4)-calendar weeks (the "**Proposed Budget**"), which Proposed Budget shall be simultaneously provided to counsel to the Committee.  As soon as practicable, and in any event within three (3) business days of receiving such Proposed Budget, the Agent, on behalf of the Required Prepetition Secured Parties, shall notify the Debtors (who, in turn, shall promptly notify the Committee) in writing whether or not such Proposed Budget has been approved by the Required Prepetition Secured Parties.  Upon approval thereof by the Required Prepetition Secured Parties, as notified by the Agent in writing, such Proposed Budget shall be the Approved Budget; *provided* that if such Proposed Budget is not satisfactory to the Required Prepetition Secured Parties in their reasonable discretion and not approved by the Required Prepetition Secured Parties, as notified by the Agent in writing, within such time, the Approved Budget that is then in effect shall remain in place.  No changes to the fees and expenses of the Committee's professionals in the Approved Budget shall be made without the written consent of the Committee. Notwithstanding anything to the contrary in the Motion, the Interim Order, this Final Order, the Initial Budget, or any Approved Budget, the Debtors are not authorized to pay any amounts to or on account of Sponsor Counsel pursuant to this Final Order.

(c)      The Debtors will provide the Prepetition Secured Parties with a variance report no more than one (1) calendar week after the entry of this Final Order, and will provide a subsequent variance report every Friday thereafter (each such report, the "**Variance Report**"), which Variance Report shall be simultaneously provided to counsel to the Committee.[3]

---

[3]    The Variance Report shall be in form and substance reasonably acceptable to the Required Prepetition Secured Parties and shall measure receipts and disbursements relative to the Approved Budget (combining the previous Approved Budget and the Approved Budget then in effect, as applicable) for the prior cumulative four (4) week

(d)     Notwithstanding anything herein to the contrary, the Debtors shall not be permitted to use cash on account at BNPP securing certain Prepetition Credit Agreement obligations, including Agency Fees owed to the Agent (the "**Possessory Cash Collateral**").  All references herein to the Cash Collateral and permitted use thereof shall exclude the Possessory Cash Collateral.

4.     <u>Reports</u>.  The Debtors shall promptly provide any modified Approved Budget and Variance Report to the U.S. Trustee; *provided, however*, the Debtors may take appropriate actions with respect to confidentiality of any portion of the Approved Budget and Variance Report.  The Debtors shall concurrently provide to counsel for the Committee any reporting required to be delivered to the Prepetition Secured Parties under this Final Order and/or the Prepetition Financing Documents.

5.     <u>Use of Prepetition Collateral (including Cash Collateral)</u>.  Immediately upon entry of this Final Order, the Debtors are authorized to use Cash Collateral (excluding, for the avoidance of doubt, the Possessory Cash Collateral), to fund working capital requirements and operating and administrative expenses of the Debtors, including the fees and expenses of the Retained Professionals (as defined herein), during the Chapter 11 Cases and other line items subject to and in accordance with the terms of the Approved Budget and this Final Order.  The Debtors are further authorized to use the Prepetition Collateral (including Cash Collateral, which, for the avoidance of doubt, excludes the Possessory Cash Collateral) during the period from the Petition Date through and including the Termination Date (as defined herein) in accordance with the terms and conditions of this Final Order.

---

period; *provided* that, the first three (3) Variance Reports delivered in accordance with this Interim Order for testing purposes may measure receipts and disbursements for shorter periods (*e.g.*, prior one (1) week for the initial Variance Report, prior cumulative two (2)-week period for the second Variance Report, and prior cumulative three (3)-week period for the third Variance Report).

6.  <u>No Control</u>.  The Debtors acknowledge, stipulate, and agree, and this Court hereby finds and orders, that in no event shall the Prepetition Secured Parties be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the Prepetition Secured Parties do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs by the lender of a vessel or facility owned or operated by a debtor, or otherwise cause liability to arise to the federal or state government, or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 *et seq.* of title 42, United States Code, as amended, or any similar federal or state statute)

7.  <u>Amendments</u>.  Each of the Debtors is expressly authorized and empowered to enter into amendments, supplements, extensions, or other modifications from time to time in any manner as to which Debtors and the Required Prepetition Secured Parties mutually agree in writing without further order of this Court; *provided*, that notice of any modification or amendment shall be provided by the Debtors to the U.S. Trustee and counsel to the Committee, which parties may object to such material modification or amendment, in writing, within five (5) business days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Debtors, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); *provided, further*, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of this Court, the entry of which may be sought on an expedited basis.

8.      Carve-Out.

(a)      Generally.  The Prepetition Secured Liens, the Adequate Protection Liens, and the Section 507(b) Claims (as defined herein) of the Prepetition Secured Parties, shall be subject to the payment in full, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**") from, at the Debtors' reasonable discretion, the Cash Collateral or proceeds resulting from liquidation of Prepetition Collateral or Postpetition Collateral:

(i)      the fee and expense claims of the respective retained professionals of the Debtors and the Committee, if any, that have been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the Bankruptcy Code including any interim approval as set forth in any procedures approved by this Court relating to the interim approval of fees and expenses of the Retained Professionals (this Court approved professionals of the Debtors and any Committee are collectively referred to as the "**Retained Professionals**"), the reasonable expenses of members of the Committee, if any (the "**Committee Member Expenses**," which shall not include legal fees and expenses of Committee members) which were incurred (A) on and after the Petition Date and before the Carve-Out Trigger Date (as defined herein), provided that the Carve-Out shall be reduced dollar-for-dollar by any payments of fees and expenses to the applicable Retained Professional and shall be paid out of any prepetition retainer, not to exceed the aggregate amount set forth in the Approved Budget, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $750,000 for all Retained Professionals and Committee Member Expenses; *provided* that, in each case, such fees and expenses of the Retained Professionals and Committee Member Expenses are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise

and are not excluded from the Carve-Out under Paragraph 8 of this Final Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses);

(ii)     any and all accrued and unpaid fees and expenses of the Debtors' independent director, Ms. Jill Frizzley, without regard to when such fees and expenses accrued, until such time as Ms. Frizzley ceases to be the Debtors' independent director;

(iii)     the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code plus statutory interest, if any, imposed under 31 U.S.C. § 3717.  There is no limitation on the obligations of the Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(b)     Carve-Out Trigger Date.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Required Prepetition Secured Parties provide written notice to the Debtors, the U.S. Trustee, and counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default (as defined herein) under this Final Order or upon the Termination Date.

(c)     Reduction of Amounts.  The fixed dollar amount available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals and Committee Member Expenses (whether from Cash Collateral or otherwise).

(d)     Reservation of Rights.  The Prepetition Secured Parties reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought

that are not provided for in the Approved Budget. The payment of any fees or expenses pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Prepetition Secured Parties, or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral or Prepetition Collateral (or their respective claims against the Debtors) except as provided herein, including, but not limited to, with respect to the Carve-Out, which is expressly senior to such liens and security interests.

(e) <u>No Direct Obligation</u>. None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of the type described in Paragraph 8(a) in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay any compensation or to reimburse any expenses of the type described in Paragraph 8(a) or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

9. <u>Waiver of Right to Surcharge</u>. Subject to payment of accrued and unpaid budgeted expenses for payroll and related employee benefits contemplated by the Approved Budget through the Termination Date and in light of (a) the consent of the Prepetition Secured Parties to the current payment of administrative expenses of the Debtors' estates in accordance with the Approved Budget, (b) the agreement of the Prepetition Secured Parties to permit the Prepetition Secured Liens, the Adequate Protection Liens, and Section 507(b) Claims to be subordinated to the Carve-Out, and (c) the agreement of the Prepetition Secured Parties to permit the use of Cash Collateral for payments made in accordance with the Approved Budget, the Prepetition Secured Parties are entitled to a waiver of (i) the provisions of section 506(c) of the Bankruptcy Code and (ii) any "equities of the case" claims or other claims under sections 105(a)

or 552(b) of the Bankruptcy Code.  Subject to payment of accrued and unpaid budgeted expenses for payroll and related employee benefits contemplated by the Approved Budget through the Termination Date, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the Approved Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the Postpetition Collateral, the Prepetition Collateral, and the Prepetition Secured Parties or their claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the Approved Budget and this Final Order, the Prepetition Secured Parties have relied on the foregoing provisions of this Paragraph 9.  Notwithstanding any approval of or consent to the Approved Budget, nothing in this Final Order shall constitute or be deemed to constitute the consent by any of the Prepetition Secured Parties to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Approved Budget) against such party, its claims or its collateral under sections 105(a), 506(c), or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

10.     Automatic Perfection.

(a)     The Adequate Protection Liens granted pursuant to this Final Order to the Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon entry of this Final Order by this Court without any further action by any party.  The Prepetition Secured Parties in respect of the Adequate Protection Liens shall not be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or

contract), mortgagee waivers, bailee waivers, or warehouseman waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency in respect of trademarks, copyrights, trade names, or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record, or perfect the Adequate Protection Liens granted under this Final Order and approved hereby, all of which are automatically and immediately perfected by the entry of this Final Order. Without limiting the foregoing, the Agent, on behalf of the Prepetition Secured Parties, has, pursuant to this Final Order and will be deemed to have, a perfected Adequate Protection Lien on all existing deposit accounts of each Debtor and any new deposit account that any Debtor may establish on or after the date hereof without any further action by the Debtors or the Prepetition Secured Parties. If the Required Prepetition Secured Parties, in their reasonable discretion, choose to obtain, enter into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority, or enforceability of the Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of optional recording or filing any Perfection Documents, the Agent and the Prepetition Secured Parties may, in each of their reasonable discretion, choose to record or file a true and complete copy of this Final Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording

or filing at such place of recording or filing), and such recording or filing by the Agent or the Prepetition Secured Parties shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date. In addition, the Required Prepetition Secured Parties may, in their reasonable discretion, require the Debtors to file or record any Perfection Document. The Debtors are authorized to execute and deliver promptly upon demand to the Prepetition Secured Parties all Perfection Documents as the Required Prepetition Secured Parties may reasonably request.

11. <u>Stipulations and Waivers</u>. Subject to and without prejudice to the rights of any Committee and any other party with standing as set forth in Paragraph 12 below, the Debtors admit, stipulate, and agree to the following, and make the releases and waivers set forth below, on and as of the Petition Date:

(a) All Prepetition Financing Documents are valid and enforceable by the Prepetition Secured Parties against the applicable Debtors in accordance with their respective priorities. The Debtors further admit, acknowledge, and agree that (i) the Prepetition Secured Obligations constitute legal, valid, and binding obligations of each of the applicable Debtors, (ii) no offsets, defenses, recoupments, setoffs or counterclaims to the Prepetition Secured Obligations exist, and (iii) no portion of the Prepetition Secured Obligations or any payments made to any or all of the Prepetition Secured Parties are subject to disallowance, avoidance, disgorgement, recharacterization, recovery, subordination, attachment, offset, counterclaim, reduction, or a "claim" (as defined in section 101(5) of the Bankruptcy Code) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(b)     As of the Petition Date, the Prepetition Secured Obligations for which the applicable Debtors were truly and justly indebted to the Prepetition Secured Parties are set forth in Paragraph C of this Final Order.

(c)     As of the Petition Date, the Prepetition Secured Liens are (i) valid, binding, perfected, duly recorded, and enforceable liens on, and security interests in the Prepetition Collateral, and (ii) not subject to, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, set-off, offset, recoupment, counterclaim, defense, claim, impairment, or any other challenge of any kind by any person or entity.  The Prepetition Secured Liens were granted for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Prepetition Financing Documents.

(d)     Due to the commencement of the Chapter 11 Cases, the Prepetition Borrowers are in default with respect to their Prepetition Secured Obligations and an event of default has occurred under each of the Prepetition Financing Documents.

(e)     None of the Prepetition Secured Parties control the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Final Order or the Prepetition Financing Documents.

(f)     No offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Secured Liens or Prepetition Secured Obligations exist, and no facts or occurrence supporting or giving rise to any offset, challenge, objection, defense, claim, or counterclaim of any kind or nature to any of the Prepetition Secured

Liens or Prepetition Secured Obligations exist.

(g)     The Debtors do not possess, and shall not assert, any claim, counterclaim, setoff, objection, challenge, or defense of any kind, nature or description that would in any way affect the validity, priority, perfection, enforceability, or non-avoidability of any Prepetition Secured Obligations.

(h)     The Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any Diminution in Value.

12.     <u>Effect of Stipulations on Third Parties</u>.

(a)     <u>Generally</u>.  The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph 11 and Paragraph C above of this Final Order (collectively, the "**Prepetition Lien and Claim Matters**") are and shall be binding on the Debtors, their estates, and any successors thereto, any subsequent trustee (including any chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, if any, *unless*, and solely to the extent that, a party-in-interest with standing and requisite authority, including a chapter 7 trustee or chapter 11 trustee (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 11 of this Final Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by **11:59:59 p.m. (ET) on Tuesday, April 25, 2023** (the "**Challenge Deadline**"), as such date may

be extended in writing from time to time in the reasonable discretion of the Required Prepetition Secured Parties or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal, *provided* that if a chapter 11 trustee is appointed or the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Deadline, the chapter 11 or chapter 7 trustee, as applicable, shall have until the later of (i) the Challenge Deadline or (ii) the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Cases to cases under chapter 7, as applicable, to commence a Challenge (and, in the event that the Committee commenced a Challenge (including by filing a Standing Motion (as defined below) or other Challenge that raises an LLC Challenge Issue (as defined below)), prior to the appointment of such chapter 7 trustee that such chapter 7 trustee elects within such extended Challenge Period to itself prosecute, such chapter 7 trustee shall be deemed automatically substituted for the Committee, without further order of the Court).  Notwithstanding anything contained herein to the contrary, the Challenge Period will be tolled for the Committee if it formally moves for an order of this Court conferring standing or authority (the "**Standing Motion**") to bring a Challenge prior to the end of the Challenge Period, from the date the Committee so moves until such time as standing is granted or denied (and if granted, for a period of five (5) business days thereafter) pursuant to an order of the Court with regard to such Standing Motion; provided, that the Challenge Period (a) will only be tolled if such Standing Motion attaches a proposed complaint identifying the specific Challenge(s) that the Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (b) will only be tolled with respect to such

Challenge(s) and defendant(s) specifically identified in that proposed complaint. Nothing herein shall limit the Committee's ability to file a timely Standing Motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company and applicable non-bankruptcy law prohibits a party other than the Debtors from bringing such claim (an "**LLC Challenge Issue**"). In the event the Committee files a timely Standing Motion that includes an LLC Challenge Issue, the expiration of the Challenge Period solely for the specific Challenge set forth in the proposed complaint attached to the Standing Motion, and solely as to the defendant(s) specifically named therein, shall be tolled until five (5) Business Days after the Court enters an order addressing the relief requested in the Standing Motion, and the Committee, the Debtors, the Agent, and any relevant parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge to address the LLC Challenge Issue. If a timely Standing Motion that includes an LLC Challenge Issue is filed, the Debtor limited liability company on behalf of whom the Standing Motion has been filed (or a designated representative thereof) shall, to the extent permitted by applicable law, be deemed to have retained the authority to prosecute the specific Challenge set forth in the proposed complaint attached to Standing Motion solely as to the defendant(s) named in such proposed complaint to the extent that the Standing Motion, including an appropriate resolution of any LLC Challenge Issue, is granted.

(b)     <u>Binding Effect</u>.    To the extent any Prepetition Lien and Claim Matters are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or

requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Final Order become binding, conclusive and final on the Debtors, their estates, all creditors, any person, entity, or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Debtors' estates. More specifically, as to (i) any parties in interest, including the Committee, if any, who fails to file a Challenge within the Challenge Deadline, or if any such Challenge is filed and overruled, or (ii) any and all Prepetition Lien and Claim Matters that are not expressly the subject of a timely Challenge: (A) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner, or any other estate representative appointed in the Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any successor cases), shall be deemed to be forever waived and barred, (B) all of the findings, Debtors' stipulations, waivers, releases, affirmations, and other stipulations hereunder with respect to the Prepetition Liens and Claim Matters, including as to the priority, extent, validity, perfection, and enforceability of the Prepetition Secured Liens and the Prepetition Secured Obligations, shall be of full force and effect and forever binding upon the Debtors' estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any successor cases, and (C) the Prepetition Secured Parties and each of their respective agents, officers, directors, employees, attorneys, consultants, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Prepetition Lien and Claim Matters and shall not be subject to any further objection or challenge by any party at any time. Notwithstanding anything to the contrary herein, if any such proceeding

is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review. To the extent any such Challenge proceeding is timely and properly commenced and subject to any limitations imposed by the Bankruptcy Code, the Prepetition Secured Parties shall be entitled to payment of related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding, in accordance with this Final Order and the Prepetition Financing Documents.

(c)     No Standing. Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their estates, including, without limitation, any Challenge with respect to the Prepetition Financing Documents, the Prepetition Secured Liens, and/or the Prepetition Secured Obligations.

13.     Limitation on Use of Proceeds. Notwithstanding anything in this Final Order to the contrary, no portion or proceeds of the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget shall be used for the payment of professional fees, disbursements, costs, or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Prepetition Financing Documents or any security interests, liens or claims granted under this Final Order or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action, including any of the Debtors' claims and causes of action arising under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or any other similar state or federal law (collectively, the "**Avoidance Actions**"), against any of the Prepetition Secured Parties or any of their respective agents, affiliates,

subsidiaries, directors, officers, representatives, attorneys, or advisors; or (c) contesting the Prepetition Lien and Claim Matters; *provided* that no more than $75,000 in the aggregate of the proceeds of the Postpetition Collateral, Prepetition Collateral, the Cash Collateral, and the Carve-Out (which amount, for the avoidance of doubt, shall be credited against the aggregate amount allocated to Committee professionals under the Approved Budget) may be used by the Committee, if any, solely to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

14. <u>Adequate Protection</u>. The Prepetition Secured Parties agree, and this Court finds, that the adequate protection provided in this Final Order (the "**Adequate Protection**"), including, without limitation, in this Paragraph 14, is reasonable and calculated to protect the interests of the Prepetition Secured Parties. Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Final Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such request.

(a) <u>Prepetition Secured Party Adequate Protection Liens</u>. As adequate protection for the Prepetition Secured Parties for the Prepetition Secured Liens, the Agent, in accordance with sections 361 and 363(e) of the Bankruptcy Code, is hereby granted, for the benefit of the Prepetition Secured Parties, additional and replacement valid, binding, enforceable, non-avoidable, and perfected postpetition security interests and liens (the "**Adequate Protection Liens**") upon all present and after-acquired property and assets of any nature whatsoever, whether real or personal, tangible, or intangible, wherever located, of the Debtors and their estates, excluding Avoidance Actions of the Debtors or their estates and the proceeds thereof (collectively,

the "**Postpetition Collateral**"), in each case to secure the Prepetition Secured Obligations against, without duplication, the aggregate Diminution in Value, if any. The Adequate Protection Liens are subject and subordinate only to (A) the Carve-Out and (B) the Permitted Prior Liens. The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361 or 363 of the Bankruptcy Code or otherwise except as expressly provided in this Final Order, including, without limitation, with respect to the Carve-Out and Permitted Prior Liens. The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases, or any successor cases. For the avoidance of doubt, this Final Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of the Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording of any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any Postpetition Collateral) to attach, validate, perfect, or prioritize such liens and security interests, or to entitle the Prepetition Secured Parties to the priorities granted herein. Notwithstanding anything to the contrary herein, in connection with any enforcement action or exercise of remedies, the Prepetition Secured Parties shall use commercially

reasonable efforts to first look to, and exhaust, all other Postpetition Collateral to satisfy the Adequate Protection Liens before turning to any commercial tort claims of the Debtors or their estates.

(b)  Section 507(b) Claims.  As further Adequate Protection hereunder, the Prepetition Secured Parties and the Agent, for the benefit of the Prepetition Secured Parties, are hereby each granted an allowed administrative expense claim pursuant to section 507(b) of the Bankruptcy Code solely to the extent of any Diminution of Value (each, a "**Section 507(b) Claim**") with super-priority over all other administrative expenses (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise) and all other claims against the Debtors or their estates or any kind or nature whatsoever, but in all cases subject and subordinate to the Carve-Out and the Permitted Prior Liens.  The Section 507(b) Claims shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, subject to the marshaling provision below. The Section 507(b) Claims shall be valid and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any successor cases.  Notwithstanding anything to the contrary herein, the Section 507(b) Claims shall be payable first from all other property of the Debtors before being payable from the proceeds of the Avoidance Actions and commercial tort claims of the Debtors or their estates.

(c)  Adequate Protection Payments.  The Debtors shall pay, in cash, the reasonable and documented fees and expenses of the attorneys and advisors of the Agent (including, but not limited to, the fees, expenses, and disbursements of Mayer Brown LLP, as primary counsel to the Agent, and Potter Anderson & Corroon LLP, as Delaware counsel to the

Agent, and FTI Consulting, Inc., as financial advisor to the Agent (collectively, the "**Agent Advisors**")) arising under the Prepetition Financing Documents subsequent to the Petition Date, from the third full week following the Petition Date and every two (2) weeks thereafter (the "**Adequate Protection Payments**").  The Agent Advisors shall not be required to file an application seeking compensation for services or reimbursement of expenses with this Court.  The Agent Advisors seeking compensation for services or reimbursement of expenses under the Prepetition Financing Documents or this Final Order shall transmit every two (2) weeks a reasonably detailed invoice (which shall include the total number of hours billed by attorney or other professional but shall not be required to comply with any particular format, and may be in summary form only) to counsel to the Debtors, the U.S. Trustee, and the Committee; *provided* that any such invoice may be reasonably redacted to protect from disclosure any confidential information or information otherwise subject to a protective privilege such as attorney-client privilege or attorney work-product privilege.[4]  The Debtors, U.S. Trustee, and the Committee shall have ten (10) business days in which to raise an objection to the payment of any fees and expenses of such Agent Advisors.  Upon the expiration of such ten (10) business-day period, the Debtors shall promptly pay any portion of such fees and expenses to which no objection has been interposed.  To the extent any objection has been interposed and cannot be consensually resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus hearing in the Chapter 11 Cases.  Any and all amounts paid by the Debtors under this Paragraph 14 are deemed permitted uses of Cash Collateral hereunder and not subject to the Approved Budget.

---

[4]    The provision of information pursuant to the terms hereof shall in no event constitute a waiver of attorney-client privilege or of any benefits of the attorney work product doctrine.

(d)　　Agency Fees.  The Agent shall receive from the Debtors current cash payments of all reasonable and documented prepetition and postpetition fees, including agency fees and administrative fees, and out-of-pocket expenses incurred by and payable to the Agent under the Prepetition Financing Documents (the "**Agency Fees**") as disclosed in the Approved Budget.

(e)　　Key Documents.  Certain documents and agreements material to the Chapter 11 Cases, including, but not limited to, the following (and any modifications, restatements, supplements or amendments to any of them, collectively, the "**Key Documents**"), shall be in form and substance reasonably acceptable in all respect to the Required Prepetition Secured Parties:  (i) the bidding procedures and the order approving the bidding procedures;  (ii)  those certain Asset Purchase Agreements (the "**Stalking Horse APAs**"), by and between certain of the Debtors and the Stalking Horse Bidders (as defined on Exhibit 2 to this Final Order), or any alternative asset purchase agreement providing for the sale of substantially all of the Debtors' assets; (iii) any order approving the sale of substantially all of the Debtors' assets; and (iv) any plan of reorganization or liquidation and documents related thereto (including but not limited to the any exhibits or supplements thereto), any motion or other pleadings related to such plan or solicitation or confirmation of same.

(f)　　Adequate Protection Reservation.  The receipt by the Prepetition Secured Parties of the Adequate Protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Each of the Debtors shall be jointly and severally liable for the Adequate Protection provided for herein, and any amendment or modification to the Adequate Protection shall require the prior written consent of the Required Prepetition Secured Parties.

15.     Modification of Automatic Stay.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtors to grant Adequate Protection as set forth herein; (b) permit the Debtors to perform such acts as reasonably requested by the Required Prepetition Secured Parties to assure the perfection and priority of the Adequate Protection Liens granted herein; and (c) authorize the Debtors to make, and the Agent to retain and apply, payments in accordance with the terms of this Final Order.

16.     Events of Default.  The Debtors' right, and the right of any other representative of the estates, to use Cash Collateral under this Final Order shall terminate (other than in respect of the Carve-Out), by written notice or demand by the Agent on behalf of the Required Prepetition Secured Parties to the Debtors (who, in turn, shall promptly notify the Committee) but without any further order of this Court, on the earliest to occur of the following: (a)  [reserved]; (b) the appointment of a chapter 11 trustee or of an examiner with expanded powers in the Chapter 11 Case (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (c) the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; (d) the dismissal of any of the Chapter 11 Cases; (e) a breach by a Stalking Horse Bidder of a material provision of the Stalking Horse APA with a purchase price not less than $12,000,000; (f) failure to meet or satisfy any Milestone (as defined herein), unless extended by agreement of the Required Prepetition Secured Parties or order of this Court; (g) failure for a Key Document to be in form and substance reasonably acceptable in all respects to the Required Prepetition Secured Parties; (h) the use of any portion of the Prepetition Collateral, the Cash Collateral or the Carve-Out in a manner that is inconsistent with the Approved Budget, subject to the Permitted Variances; (i) filing of a motion, application or other pleading to obtain postpetition

financing that has not been consented to by the Required Prepetition Secured Parties; (j) entry of an order or a judgment by this Court or any other court staying, reversing, vacating, amending, rescinding or otherwise modifying any of the terms of the Interim Order, this Final Order, or filing of a motion, application or other pleading by the Debtors seeking such entry, in each case without the consent of the Required Prepetition Secured Parties; or (k) a final determination by this Court that a material violation or breach (other than by the Prepetition Secured Parties) of any of the provisions of this Final Order has occurred (each, an "**Event of Default**," collectively, the "**Events of Default**").

17. <u>Termination of Use of Cash Collateral</u>. Notwithstanding anything in this Final Order to the contrary, the Debtors shall be permitted to use the Cash Collateral pursuant to this Final Order through the date that is the earliest of: (a) the occurrence of an Event of Default; (b) forty-five (45) days after the date of consummation of a sale pursuant to the last to close of the Stalking Horse APAs or an alternative asset purchase agreement; (c) the occurrence of the effective date of any confirmed plan of reorganization or liquidation in the Chapter 11 Cases; or (d) 115 days after the Petition Date if an order confirming a plan of reorganization or liquidation has not been entered prior to such date (the "**Termination Date**"); *provided*, *however*, that, during the Remedies Notice Period, the Debtors may continue to use Cash Collateral solely to make payroll and pay related employee benefits in accordance with the Approved Budget.

18. <u>Prepetition Secured Parties Remedies</u>. Upon the Termination Date, and without further notice, motion or application to, order of, or hearing before, this Court (other than such notice required by Paragraph 16 and this Paragraph 18), subject to the full funding of the Carve-Out, the Prepetition Secured Parties (a) may cease making financial accommodations to the Prepetition Borrowers (except consent to use Cash Collateral during the Remedies Notice Period

solely to make payroll and pay related employee benefits in accordance with the Approved Budget) and (b) are granted leave to, without limitation, (i) accelerate any or all of the Prepetition Secured Obligations and (ii) declare such Prepetition Secured Obligations to be immediately due and payable in full, in cash. Upon the Termination Date, and after providing five (5) business days' prior written notice (the "**Remedies Notice Period**") to this Court, the U.S. Trustee, and counsel to the Committee, the Prepetition Secured Parties shall be entitled to exercise all of their rights and remedies under this Final Order and the Prepetition Financing Documents, including, without limitation, foreclose upon the Prepetition Collateral or Postpetition Collateral or otherwise enforce the Prepetition Secured Obligations, the Adequate Protection Liens, and any or all of the Prepetition Collateral, and/or to exercise any other default-related remedies under the Prepetition Financing Documents, this Final Order, or applicable law in seeking to recover payment of the Prepetition Secured Obligations. With respect to Permitted Prior Liens, any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law. During the Remedies Notice Period, any party in interest may seek an order of this Court (which may be sought on expedited notice) staying the Prepetition Secured Parties' exercise of such remedies against the Prepetition Collateral and, if no such stay is obtained, then the Prepetition Secured Parties may exercise any and all such rights and remedies and the Debtors' authority to use Cash Collateral under this Final Order shall terminate, in each case, without further order of this Court or notice to any party. Notwithstanding the occurrence of a Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Final Order as of such date shall survive the Termination Date.

19. <u>Disposition of Collateral</u>. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any material portion of the Prepetition Collateral or the

Postpetition Collateral outside of the ordinary course of business, without the prior written consent of the Required Prepetition Secured Parties, unless such sale, transfer, lease, encumbrance, or other disposition is approved by this Court.

20.     Milestones.  As a condition to the use of Cash Collateral, the Debtors shall comply with the milestones attached hereto as Exhibit 2 (the "**Milestones**").   For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall constitute an Event of Default under this Final Order, (b) subject to the expiration of the Remedies Notice Period, result in the automatic termination of the Debtors' authority to use Cash Collateral under this Final Order, and (c) permit the Prepetition Secured Parties, subject to the terms of this Final Order, to exercise the rights and remedies provided for in this Final Order.

21.     Release.  Subject to the rights of certain parties under Paragraph 12 hereof, the Debtors on behalf of themselves and their estates (including any successor trustee or other estate representative in any of the Chapter 11 Cases or any successor cases) and any party acting by, or through, the Debtors or their estates, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully, forever waive and release the Agent and each of the other Prepetition Secured Parties, and each of their respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest from any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Prepetition Financing Documents or the transactions contemplated under or in relation to any such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or

threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," any challenge or claim to exercises of remedies, recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or the claims of the Agent and other Prepetition Secured Parties.

22. <u>Successors and Assigns</u>. This Final Order shall be binding upon all parties in interest in the Chapter 11 Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other estate representative.

23. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any subsequent order, and the rights, remedies, powers, privileges, liens and priorities of the Prepetition Secured Parties provided for in this Final Order and any Prepetition Financing Document shall not be modified, altered or impaired in any manner without their consent (which consent shall not be unreasonably withheld) by any order, including any order (a) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a chapter 7 case, (c) dismissing any of the Chapter 11 Cases, or (d) any superseding cases under the Bankruptcy Code. The terms and provisions of this Final Order as well as the Adequate Protection granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Final Order and the Prepetition Financing Documents and to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid in full, in cash.

24.     Good Faith.  The use of Cash Collateral and the other provisions of this Final Order have been negotiated in good faith and at arm's length among the Debtors and the Prepetition Secured Parties, and the extension of the financial accommodations to the Debtors by the Prepetition Secured Parties pursuant to this Final Order have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to, and are hereby granted, the full protections of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

25.     Subsequent Reversal or Modification.  Subject to Paragraphs 23 and 24, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability under this Final Order by the Debtors prior to the date of receipt of written notice to the Prepetition Secured Parties and Agent of the effective date of such action, or (b) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Final Order, including, without limitation, the Prepetition Secured Obligations, the Prepetition Secured Liens, the Adequate Protection Liens, the Adequate Protection Payments and the Section 507(b) Claims.

26.     No Waiver.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.  Any consent, modification, declaration of default, or exercise of remedies or non-exercise of remedies under or in connection with this Final Order shall require the approval of the Required Prepetition Secured Parties and shall not be deemed a waiver or relinquishment of any of the rights of the Prepetition Secured Parties.  Except as expressly set

forth herein, nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice, or modify any rights, claims, or defenses available in law or equity to the Prepetition Secured Parties, including, without limitation, the right (a) to request conversion of any of the Chapter 11 Cases to chapter 7, (b) to seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) to object to the fees and expenses of any Retained Professionals, and (d) to seek relief from the automatic stay. All such rights, claims and defenses, and the rights, objections, and defenses of all parties in connection therewith, are hereby reserved.

27. <u>Additional Defaults</u>. In addition, and without limitation of the Events of Default set forth in and defined in this Final Order, it shall be a default hereunder if an order is entered dismissing or converting any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a chapter 11 trustee or an examiner or other estate representative with expanded powers. Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the Prepetition Secured Parties under this Final Order and shall preserve the Carve-Out. It shall be an Event of Default for a sale under the Stalking Horse APAs or any alternative asset purchase agreement or other sale of substantially all of the assets of the Debtors, unless, upon the closing of such transaction, all liens securing the Prepetition Secured Obligations are transferred to the proceeds of such sale. If an order dismissing any of the Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that the Prepetition Secured Liens, Adequate Protection Liens, Adequate Protection Payments, Section 507(b) Claims granted to the Prepetition Secured Parties hereunder, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and

shall maintain their priorities as provided in this Final Order until all Prepetition Secured Obligations and indebtedness owing to the Prepetition Secured Parties under the Prepetition Financing Documents shall have been indefeasibly paid in full in cash and the Prepetition Secured Parties' obligations and commitments under the Prepetition Financing Documents shall have been terminated, and this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Prepetition Secured Obligations, the Prepetition Secured Liens, Adequate Protection Liens, Adequate Protection Payments, Section 507(b) Claims, and the Carve-Out.

28.     <u>Order Governs</u>.  In the event of any conflict between the provisions of the Interim Order, this Final Order, and the Motion, or any supporting documents, the provisions of this Final Order shall control and govern to the extent of such conflicts.

29.     <u>No Marshaling</u>.  Except as provided in Paragraph 14 herein, none of the Prepetition Secured Parties or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action.

30.     <u>Master Proof of Claim</u>.  The Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or any successor cases, and the Debtors' stipulations in Paragraph 11 and Paragraph C herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors; *provided, however*, that the Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized in its reasonable discretion to file (and amend and/or supplement, as it sees fit) a master proof of claim for the claims of the Prepetition Secured Parties arising from the applicable Prepetition Financing Documents in accordance with any order entered by this Court in relation to the establishment of a bar date in

the Chapter 11 Cases; *provided further* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

31. <u>Immediate Effect of Order</u>. This Final Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Final Order. All objections to the entry of this Final Order have been withdrawn or overruled, and the Motion is approved on a final basis on the terms and conditions set forth herein. The Debtors shall promptly mail copies of this Final Order to the Notice Parties and to counsel to the Committee, if any.

**Dated: March 13th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**